# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

CHARLES WILLIAM ADAMS,

    Unrepresented Plaintiff,

    -vs-

UNITED STATES,
DAVID TOY and
MICHAEL J. LEAHEY,

    Defendants.

Case Nos.  04M-1053-JGD
               04M-1055-JGD

## MEMORANDUM IN SUPPORT OF
## MOTION FOR RETURN OF SEIZED PROPERTY

The Plaintiff having moved for suppression and return of property claim to have been illegally seized does hereby submit this Memorandum In Support Of Motion For Return Of Seized Property.

## ARGUMENT

### I. INTRODUCTION

The Fourth Amendment requires that "no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The particularity requirement prevents a "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*,

403 U.S. 443, 467, 91 S.Ct. 2022, 2038 (1971), and "'makes general searches... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" See *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 512 (1965), quoting *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76 (1927); *United States v. Torch*, 609 F.2d 1088, 1089 (4th Cir. 1979) (the "particularity" requirement of the Fourth Amendment is "accomplished by removing from the officer executing the warrant all discretion as to what is to be seized"). See also *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748 (1976); *United States v. Leary*, 846 F.2d 592 (10th Cir. 1988); *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988); and *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir. 1985).

The Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant; see *Stanley v. Georgia*, 394 U.S. 557, 571-72, 89 S.Ct. 1243 (1969). A flagrant disregard for the limitations of a search warrant transforms a valid search into an impermissible general search and thus requires the suppression and return of all evidence seized during the search; see *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210 (1984); *United States v. Medlin*, supra; *United States v. Crozier*, 777 F.2d 1376 (9th Cir. 1985); *Marvin v. United States*, 732 F.2d 669 (8th Cir. 1984); *United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982); *United States v. Wuagneux*, 683 F.2d 1343 (11th Cir. 1982); *United States v. Heldt*, 668 F.2d 1238, 1259-60 (D.C.Cir. 1981); and *United States v. Rettig*, 589 F.2d 418 (9th Cir. 1979).

## II. FACIALLY OVERBROAD

The warrant 04M-1053-JGD to search the residence of Charles William Adams and Marie Louise Adams and their children located at 221 Madison Street, Wrentham,

Massachusetts suffers from several flaws. It authorized a general search since the description of the items to seize was not confined in important respects to any particular parties[1] or specific transactions, and thus it was overbroad. The items listed in the warrant merely described broad classes of documents without any specificity to ensure that only the records which evidence crime would be seized and other papers would remain private. Further, the warrant contained no factual reference to any criminal activity. (See Attachment B of Search Warrant 04M-1053-JGD, attached hereto and incorporated in the Memorandum of Support for reference.)

A similar warrant was declared defective in *United States v. Stubbs*, 873 F.2d 210, 212 (9th Cir. 1989), where the warrant authorized the executing officers to search a real estate business for evidence of tax evasion. The warrant authorized the seizure of "[a]ccounts and business records from May, 1977, through May, 1984 relating to: master cash receipts and disbursements journals; rental commission ledgers; general ledgers; check books; closed escrow logs; closed escrow files; canceled checks and check stubs thereto; bank statements; deposit slips; cashier check receipts; canceled trust account checks and check stubs thereof;" etc. The *Stubbs* warrant, as that here, merely described broad classes of documents without specific description of the items to be seized. The warrant in *Stubbs* was held defective because of a complete lack of any standard by which an executing officer could determine what to seize.

In *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987), the court reversed a district court's decision that the sealed affidavit and references to the general conspiracy statute and the general tax evasion statute provided the necessary specificity. The *Rickert* warrant authorized IRS agents to search and seize a list of financial documents "which are instrumental means and

---

[1] The warrant clearly does not identify documents related to specific parties. On the pages of the Attachment B additional parties are named very generally as "Names identified on Subscriber Affidavits" and "Names identified as relating to Mountain Management checking account" and "Names under which and/or for which William Dion conducts business". The Plaintiff is not William Dion. Then the warrant lists over a page and a half of common documents and devices needed to run any household or business without any limit to anything specific used in criminal activity.

evidence of the commission of offenses in violation of Title 18, United States Code, Section 371, and Title 26, United States Code, Sections 7206(2) and 7201." The court determined that the warrant on its face authorized a general search limited only by references to the general conspiracy and tax evasion statutes, which did not limit the search in any substantive manner:

> "On its face, the warrant authorizes general rummaging through the offices and company records."

In *United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986), that court invalidated as overbroad the portion of a search warrant authorizing the officers to seize articles "tending to establish the wealth and financial status of Washington including... any documents tending to show the preparation of or basis for United States Department of Treasury, Internal Revenue Service, Tax Returns." The court stated that:

> "[W]here a business is searched for records, specificity is required to ensure that only the records which evidence crime will be seized and other papers will remain private."

In *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982), the court struck as overbroad a search warrant for "corporate books and records, including but not limited to canceled and duplicate checks, check stubs, journals, ledgers, weekly summaries, driver trip envelopes, and daily schedules..." The search for evidence of tax fraud was disallowed because it required the police to distinguish between fraudulent and nonfraudulent records without offering guidelines for distinguishing them, because making such distinctions exceeded police competence, and because information available from a prior investigation would have permitted more specific descriptions. The court's reasoning is equally applicable here:

> "If items that are illegal, fraudulent, or evidence of illegality are sought, the warrant must contain some guidelines to aid the determination of what may or may not be seized."

Which the above warrants sought to be suppressed did not offer guidelines for distinguishing between fraudulent and nonfraudulent records.

In *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985), a similar warrant was in question. The *Voss* court held that "[t]he particularity requirement [of the Fourth Amendment] ensures that a search is confined in scope to particularly described evidence relating to ***a specific crime*** for which there is demonstrated probable cause." In *Leary*, 846 F.2d at 600, the same court characterized the particularity test as a "practical one." The warrant's description must "enable the searcher to reasonably ascertain and identify the things authorized to be seized.'" See *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir. 1982), quoting *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982). The particularity standard requires that a warrant enable the executing officer to distinguish between items that may and may not be seized. *Leary*, 846 F.2d at 600 n. 12.

In *In re Grand Jury Proceedings (Young)*, 716 F.2d 493, 498 (8th Cir. 1983), the court had no difficulty invalidating as a general warrant one very similar to that here. In *Young*, which arose out of an investigation into a bail-bonding business, the warrant authorized seizure of a lengthy list of records such as copies of bail bonds, powers of attorney, applications for bonds, payment records, and individual files of each client. In rejecting the government's argument that using titles of the documents to be seized satisfied the particularity requirement of the Fourth Amendment, the court held, inter alia, that because the "list itself, (See Attachments B, of the above search warrant), consist[ed] of little more than a broad statement of the types of records ordinarily kept by any bailbondman, as is the case here," the warrant was overly broad. In reaching this conclusion, the court focused on the fact that there, as here, the warrant did not relate the documents to any particular transactions, dates or offenses. As a result, the warrant was a general one issued in violation of the Fourth Amendment. **Compare**, *Andresen v. Maryland*, 427 U.S. at 480 n. 10, where the Supreme Court allowed a lengthy "laundry list" to survive attack because it was limited to such of those types of documents as pertained to a particular transaction, i.e., "pertaining to the sale, purchase, settlement and conveyance of Lot 13, block B,

Potomac Woods Subdivision." In this case, there was no limiting language in this warrant which can save it from the overly-broad sweep of its terms.

### (A) Scope of the warrant and probable cause.

A similar result was reached in *Application of Lafayette Academy, Inc.*, 610 F.2d 1, 6 (1st Cir. 1979). There, the warrant authorized a search for and seizure of nearly all books and records of a vocational home-study school in connection with possible fraudulent practices regarding the Academy's participation in the Federal Insured Student Loan Program. The court affirmed the district court's decision that the search and seizure was too broad:

> "In contrast to the broad categories of items set forth above, certain of the warrant items may be sufficiently particularized standing alone, for example, 'rosters of students,' 'student files, file jackets and contents,' 'lesson and grading cards and registers,' 'student collection reports,' and 'student survey data.' However, while these documentary descriptions may be sufficiently specific, they cover documents **antedating** Lafayette Academy's participation in FISLP. According to the affidavit in support of the warrant, Lafayette Academy was organized as a correspondence school in 1969 but did not participate in FISLP until 1972. While the affidavit establishes the relevance of post-1972 student documents, it does not indicate any nexus between the earlier student documents and alleged criminal behavior. The warrant thus improperly authorizes the seizure of documents that are apparently irrelevant to the fraud."

In *United States v. Roche*, 614 F.2d 6, 7 (1st Cir. 1980), the court, when faced with facts similar to those present here, also affirmed an order suppressing the seizure of nearly all the business records of insurance companies owned by John Roche. In *Roche*, the government had probable cause to believe that the Roche agencies were engaged in a mail fraud scheme whereby customers were charged more for car insurance than permitted by Massachusetts' law. The affidavit in *Roche* detailed the means by which the fraud was accomplished, and the warrant authorized the seizure of:

> "[B]ooks, records, documents, consisting of but not limited to, insurance applications, premium notices, claims requests for recovery, correspondence relating to applications and claims, policies, ledger sheets, invoices, account journal, and office week ending progress reports which are evidence, fruits and instrumentalities of the violation of Title 18, United States Code, Section 1341."

There, as here, the search was not limited to documents relating to the specific acts for which probable cause had been established, i.e., car insurance, but included documents relating to every aspect of the insurance business, as here. In affirming the order of suppression, the court succinctly stated the applicable guide for decision in this case:

> "Here, the government could have limited the objects of the search and seizure to documents and records pertaining to automobile insurance, but declined to do so. This impermissibly broadened the scope of the search beyond the foundation of probable cause. *See also Montilla Records of Puerto Rico, Inc. v. Morales*, 575 F.2d 324 (1st Cir. 1978)."

Similarly, because the government in this case also failed to limit the objects of this search to documents connected to alleged criminal activity possibly established in the John Mark Burbridge and Andrew J. Smyros affidavits, the search and seizure was illegal. In other words, the scope of the warrant exceeded the probable cause to support it. The Fourth Amendment requires not only that the warrant sufficiently specify the evidence to be seized, but also that the scope of the warrant be limited to the specific areas and things for which there is probable cause to search. See *Leary*, 846 F.2d at 605, citing *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 1017 (1987).

Professor LaFave in his treatise, *Search and Seizure: A Treatise on the Fourth Amendment*, § 4.6, p. 97, has observed:

> "In this connection, it must be emphasized that an otherwise objectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based."

To support this statement, Professor LaFave discusses the "excellent illustration" provided by the case of *VonderAhe v. Howland*, 508 F.2d 364, 366-67 (9th Cir. 1974). In *VonderAhe*, an IRS agent performed an audit of the 1966 and 1967 tax returns of a dentist. In the course of his examination, the agent examined various records including patient cards showing charges and collections. The records accurately reflected the income of the dentist and the case

was closed. Later, two former employees advised the IRS that the dentist kept records of his "regular" patients on white cards, while records of his "emergency" patients were kept on yellow sheets on green cards. Because only the white patient cards had been provided during the prior audit, the IRS concluded that the dentist's income was understated by the amount of the yellow sheet/green card "emergency" income. A search warrant was obtained which described the items to be seized as including:

> "Fiscal records relating to the income and expenses of Dr. Donn VonderAhe from his dental practice and other sources since January 1, 1966, to date, including, but not limited to, dental patient cards, appointment books, combined appointment/cash receipt books, combined cash receipts and cash disbursement journals, business ledgers, expense records, bank ledger sheets and statements, canceled checks, bank savings account pass books, records and correspondence relating to the opening of and deposits and withdrawals from a bank account maintained by said Doctor at the Banaue Romande in Geneva, Switzerland, plus copies of the invoices and bills sent to patients of the aforesaid doctor."

The search warrant was executed, and upon the dentist's motion to suppress, the district court held that the affidavits submitted were more than sufficient to provide probable cause. The appellate court disagreed:

> "But the words 'probable cause' are not self-defining -- 'probable cause' for what? The supporting affidavits were quite specific in describing the allegedly concealed property, namely yellow sheets and green cards. No facts were alleged which showed probable cause for the issuance of a general warrant. No charge was made that the books and records submitted to Agent Holmes were false and that they should be subject to a reaudit... Therefore, *although there may have been 'probable cause' to search for and seize the yellow sheets and green cards for 1966 and 1967, there was no probable cause shown for a seizure of all the doctor's dental books and records, or his personal and private papers.*" (Emphasis added).

Although the affidavit(s) to obtain this warrant used by David Toy remain sealed the Plaintiff must question if they provide probable cause to believe that fraud permeated every aspect of the searched premises so as to authorize so general a warrant. "Even if the allegedly fraudulent activity constitutes a large portion, or even the bulk, of the activities, there is no justification for seizing records and documents relating to legitimate activities." *Voss*, 774 F.2d at 406. See also *United States v. Bentley*, 825 F.2d 1104, 1110

(7th Cir. 1987)("When the probable cause covers fewer documents in a system of files, the warrant must be more confined and tell the officers how to separate the documents to be seized from others"); *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987) ("Although probable cause existed to search the records of one particular project, the warrant failed to so limit the search"); *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir. 1986) (list of criminal statutes in warrant went beyond probable cause in affidavit); *Voss*, 774 F.2d at 408 (Logan, J., concurring) (the breadth of a warrant must be justified by the breadth of the probable cause).

### (B) Unadorned federal statutes are insufficient.

The cases which have addressed search warrants that merely reference the items to seize as those evidencing violations of federal statutes provide excellent examples of warrants which fail to comply with the Fourth Amendment's particularity requirement. See *Leary*, 846 F.2d at 601 n. 15. The concluding sentence of the *Voss* warrant described the items to seize as "all of which are evidence of violations in Title 18, United States Code, Section 371." The Tenth Circuit declared:
> "Even to describe the warrant as limited to evidence relating to federal crimes is an interpretation generous to the government.... Even if the reference to section 371 is construed as a limitation, it does not constitute a constitutionally adequate particularization of the items to be seized," 774 F.2d at 405.

The *Leary* court, 846 F.2d at 601-603, examined a series of decisions from other circuits which have held that reference to a broad federal statute is not a sufficient limitation on a search warrant. For example, in *Roche* the warrant authorized the seizure of books, records and documents "which are evidence, fruits, and instrumentalities of the

violation of Title 18, United States Code, Section 1341 [mail fraud]." The court found this limitation to be "no limitation at all." *Roche*, 614 F.2d at 8.

The Ninth Circuit has consistently applied the same rule. In *Cardwell*, 680 F.2d at 77, the warrant was held invalid because "[t]he only limitation on the search and seizure of appellants' business papers was the requirement that they be the instrumentality or evidence of violation of the general tax evasion statute, 26 U.S.C. § 7201. That is not enough." Where the warrant provides no such guidelines, it is impermissibly overbroad on its face. *Leary*, 846 F.2d at 602. See also *Rickert*, 813 F.2d at 909 (warrant limited only by references to the general conspiracy statute and general tax evasion statute did "not limit the search in any substantive manner"); *Spilotro*, 800 F.2d at 965, supra ("effort to limit discretion solely by reference to criminal statutes was inadequate"); *United States v. Abrams*, 615 F.2d 541, 542-43 (1st Cir. 1980)(warrant limited only by reference to records and federal fraud statute is overbroad); *In re Layfayette Academy*, 610 F.2d at 3 (overbroad warrant allowed "seizure of most every sort of book or paper... limited only by the qualification that the seized item be evidence of violations of... '18 U.S.C. Sections 286, 287, 371, 1001, 1014'"); *Alioto v. United States*, 216 F.Supp. 48, 49 (E.D.Wis. 1963) (the IRS utilized a warrant to seize the "[b]ooks and records" of certain named parties which are instrumentalities of crime involving the criminal provisions of 18 U.S.C., § 1621, and 26 U.S.C., § 7201; the court found such a warrant to be impermissibly general and ordered the return of all material seized under it).

> This reasoning was adopted in *Leary*:
> "As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized... The Kleinberg warrant... does not sufficiently limit the scope of a search warrant. Absent other limiting factors, such a warrant does not comply with the requirements of the fourth amendment.
>
> "Nor did the list of business records to be seized provide any meaningful limitation on the Kleinberg search. The warrant encompassed virtually every document that

one might expect to find in a modern export company's office. Again, the fourth amendment requires more," 846 F.2d at 602.

See also *In re Grand Jury Proceedings (Young)*, 716 F.2d at 498 (laundry list of various type of records is insufficient to save the search warrant); *Roberts v. United States*, 656 F.Supp. 929, 934 (S.D.N.Y. 1987) (by "listing every type of record that could conceivably be found in an office, the warrant effectively authorized the inspectors to cart away anything that they could find on the premises").

Furthermore, should the government attempt to narrow the scope of this general warrant by reference to the affidavit, the Petitioner notes that "[a]n insufficient warrant cannot be cured by the most detailed affidavit." *United States v. Haydel*, 649 F.2d 1152, 1157 (5th Cir. 1981).

### (C) The affidavit was not attached to the warrant.

Assuming, arguendo, that the particularity of an affidavit may cure an overbroad warrant, this is true only:

> "[W]here the affidavit and the search warrant... can be reasonably said to constitute one document. Two requirements must be satisfied to reach this result: first, the affidavit and search warrant must be physically connected so that they constitute one document; and second, the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference."[2]

The warrants here issued by Magistrate Judge Judith G. Dein had no affidavits attached to or included with the warrant used by the searching agents. The affidavits were not a part of the search warrants by being physically connected so that it constituted a single document. Each time the Plaintiff has checked with the Clerk of the District Court he has been told that all documents relating to the case are still sealed.

The requirement that the affidavit and the search warrant be physically connected so that they constitute one document assures that "the person being searched has notice of

---

[2] See *Leary*, 846 F.2d at 603.

the specific items the officer is entitled to seize." See *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750 (9th Cir. 1989)(quoting *In re Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir. 1981)). The requirement that the search warrant expressly refer to the affidavit and incorporate it by reference helps assure that the affidavit actually limits "the discretion of the officers executing the warrant." Id. As previously stated, it appears that the David Toy affidavit(s) were not available to any of the government agents during the search as copies were not left with the warrant nor the inventories at the premises nor have any affidavit(s) been made available subsequently.

Several circuits have determined that both attachment and incorporation is necessary before an affidavit can be construed to cure the warrant's particularity defect. See *Stubbs*, 873 F.2d at 212 ("We will not, however, rely on an affidavit to cure the generality of a warrant where the affidavit is not attached to and incorporated by reference in the warrant"); *United States v. Luk*, 859 F.2d 667, 676 (9th Cir. 1988)("affidavit cannot be construed to cure the warrant's particularity defect because the affidavit was not expressly incorporated into the warrant by reference" even though agents possessed the affidavit when they conducted their search); *United States v. Medlin*, 798 F.2d 407, 410 n. 1 (10th Cir. 1986) ("when an affidavit is attached to a warrant and incorporated by reference into the warrant, it can be used to cure a lack of particularity"); *United States v. Fannin*, 817 F.2d 1379, 1384 (9th Cir. 1987) (deficiency was cured by the particularity of the attached and incorporated affidavit); *Spilotro*, 800 F.2d at 967 ("We are unable to rely on the affidavit to cure the generality of the warrants, however, since it was not attached to and incorporated by reference in the warrants as required by this court's decision in *United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir. 1982)"); *United States v. Hayes*, 794 F.2d 1348, 1354 (9th Cir. 1986) (affidavits did not

accompany warrant); *United States v. Strand*, 761 F.2d 449, 453 (8th Cir. 1985) (affidavit accompanied warrant but was not incorporated); *Crozier*, 777 F.2d at 1382 (although the affidavit was more specific, the agent did not have it when he made the search); *United States v. Klein*, 565 F.2d 183, 186 n. 3 (1st Cir. 1977); and *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976). See also 2 LaFave, § 4.6(a), at 241 (quoting *Bloom v. State*, 283 So.2d 134 (Fla.App.1973)); see Id. cases cited at n. 28; 3 C. Wright, *Federal Practice and Procedure* 670, at 723 (2d ed. 1982).

In any event, some measure must be taken not only to limit the discretion of the executing officers but also to inform the subjected person what the officers are entitled to take. See *Rickert*, 813 F.2d at 909; *Lafayette Academy*, 610 F.2d at 5. In this case, the executing officers refused to allow any examination of the seized materials.[3]

### (D) No guidelines were provided by the warrant.

The warrant here contained only a list of the items to be seized almost all of which can be found in any modern business. It provided no guidelines or explanation as to how the executing agents were to differentiate the legal from the allegedly illegal and fraudulent. (A copy of the warrant is included for the convenience of the court.) Thus, this warrant left to the executing officers the task of determining what items to seize.

---

[3] In *United States v. Heldt*, 668 F.2d 1238, 1267 (D.C. Cir. 1981), the court held that the perusal of documents "must cease at the point at which the warrant's inapplicability to each document is clear. Searching officers may not cart away documents unspecified by the warrant which simply look somewhat suspicious, comb through them carefully at their leisure and then return them if they do not constitute evidence of criminal activity. That sort of abuse would return us to the days of the general warrant and must be scrupulously avoided." Similarly, in *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982), the court stated that "all items in a set of files may be inspected during a search, provided that sufficiently specific guidelines for identifying the documents sought are provided in the search warrant and are followed by the officers conducting the search. (cite omitted) However, the wholesale seizure for later detailed examination of records not described in a warrant is significantly more intrusive, and has been characterized as the kind of **'investigatory dragnet that the fourth amendment was designed to prevent.'**"

In *Marcus v. Search Warrants of Property*, 367 U.S. 717, 732, 81 S.Ct. 1708, 1716 (1961), the Supreme Court struck down a search warrant authorizing seizure of "obscene materials" because there existed "no guide to the exercise of informed discretion" of the executing officer. Fundamental to the Court's concern was what it perceived as the impossibility of executing the warrant "with any realistic expectation that the obscene might be accurately separated from the constitutionally protected." See also *Roaden v. Kentucky*, 413 U.S. 496, 501-503, 93 S.Ct. 2796, 2799-2800 (1973).

In *United States v. Fuccillo*, 808 F.2d 173, 176-177 (1st Cir. 1987); *Montilla Records of Puerto Rico v. Morales*, 575 F.2d 324, 326 (1st Cir. 1978); and *United States v. Klein*, 565 F.2d 183, 190 (1st Cir. 1977), similar warrants were held invalid because they lacked objective guidelines to aid the determination of what may or may not be seized and were thus unconstitutionally vague. The court in *Klein* affirmed the decision of the district court holding invalid a mass seizure of tapes and tape cartridges under a warrant authorizing the seizure of "unauthorized 'pirate' reproductions." The question involved the failure to inform the magistrate issuing the warrant how an agent could distinguish "pirate" tapes from legal merchandise so that the warrant description could effectively limit the agent's discretion.

In *United States v. Drebin*, 557 F.2d 1316, 1322-23 (9th Cir. 1977), the court considered a seizure of film prints and documents under a warrant to seize "illegally reproduced and stolen copies of 35mm, 16mm, and 8mm motion picture films which are duly copyrighted and protected by the provisions of the United States Copyright law." The court concluded that the warrant was unlawful because it "left to the executing officers the task of determining what items fell within the broad categories stated in the warrant. The warrant provided no guidelines for the determination of which films had been illegally produced." In *Montilla Records*, 575 F.2d at 327, the only product which

the affidavit suggested was illegally manufactured was Motown records. Yet the warrant did nothing more than direct the agents to seize all "unauthorized or illegal recordings." The court refused to uphold the seizure.

In the case at bar the seizing agency, seized trusts, automobile records and title, blank checks, envelopes, and firearms that were not part of the warrants sought to be seized.

In *United States v. Marti*, 421 F.2d 1263, 1268 (2d Cir. 1970), the warrants authorized a search for "certain property [which] is being used and/or possessed in violation of Section 235.05 subd. 1 (Obscenity) of the New York State Penal Law." That court found the warrants "deficient for failing to describe with particularity the items to be seized as required by the Fourth Amendment." The court held that "[t]he warrants themselves gave no guidelines to the officers as to what is obscene and what is not. Thus, the warrants on their face left to the executing officials the discretion of deciding what materials were obscene." See also *Dalia v. United States*, 441 U.S. 238, 255, 99 S.Ct. 1682, 1692 (1979) (the Fourth Amendment prohibits general or open-ended warrants); *Washington*, 797 F.2d at 1472 ("if items that are illegal or fraudulent are sought, the warrant must contain some guidelines to aid the officers in deciding what may or may not be seized"); *United States v. Minor*, 756 F.2d 731, 737 (9th Cir. 1985) ("the government's search warrant affidavit... states with particularity the indicia by which 'bootleg records' could be identified, thereby guiding the discretion of the officers executing the warrant"); *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984) (invalidating portion of a warrant calling for seizure of papers, including currency, evidencing failures to file currency transaction reports as required by 31 U.S.C. because it "lacks objective guidelines to aid the determination of what may or may not be seized and is thus unconstitutionally vague"); *Hillyard*, 677 F.2d at 1339-41 (the magistrate incorporated

guidelines into the search warrant for the executing officers to distinguish between property legally possessed and that which was not); *United States v. Cortellesso*, 601 F.2d 28, 31 (1st Cir. 1979) ("the evidence before the magistrate must explain the method by which the executing agents are to differentiate the contraband from the rest of defendant's inventory"); and *United States v. Vastola*, 670 F.Supp. 1244, 1273 (D.N.J. 1987).

The warrant here simply conferred free-wheeling discretion upon the executing officers as to what items to seize. The entire general search was nothing more than a roving commission which left broad judgmental discretion to the agents to make legal evaluations. To permit a magistrate to delegate his responsibility for determining whether or not probable cause exists to the officers executing a search warrant, as was done here, would be to eliminate the particularity requirement as a restriction on police discretion in searching for and seizing goods. Simply stated, the executing officers, not the magistrate, ended up deciding what items to seize. The distinction is between an agent executing the instructions of the magistrate and an agent acting essentially on his own initiative.

As a result of the executing agents having no criteria or detailed description in the warrant to enable them to determine what they might lawfully seize, it is obvious from the conduct of the agents who participated in this search that they did not consider their authority to be limited. With no guidance in the warrant, the agents seized a plethora of materials, including items simply unrelated to any criminal case. In short, the warrant "left it entirely to the discretion of the officials conducting the search to decide what items"[4] were to be seized, and this is not permissible under the Fourth Amendment.

**(E) Items seized.**

---

[4] See *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 325, 99 S.Ct. 2319, 2324 (1979).

The insufficient particularity of the warrant is illustrated by some of the items actually seized pursuant to it. See *Voss*, 774 F.2d at 405; *Leary*, 846 F.2d 604 n. 22 ("[t]he insufficient particularity of the warrant(s) #04M-1053-JGD is illustrated by some of the items actually seized some of which are listed in the inventory attached to the warrant. The warrant #04M-1053-JGD allowed precisely the kind of rummaging through a person's belongings, in search of evidence of even previously unsuspected crimes or of no crime at all, that the fourth amendment proscribes. Here, the searching agents had apparent authority to seize vaguely described items and such items were in fact seized. However, assets such as an automobile title, firearms, Massachusetts Class A firearms license and correspondences with the Social Security Administration were not described in this warrant but such items were seized. This type of conduct regarding the seizure of evidence not described in the warrant by the executing officers demonstrates the overbreadth of the description of items to seize of this warrant, which allows the kind of rummaging through a person's belongings that the particularity requirement was meant to prevent.

### (F) Executing officers' discretion.

It is clear that nothing should be left to the discretion of the agents executing the warrant. One indication that the searching agents could not identify the items to be seized with reasonable certainty would consist of a command to take everything given by the agent in charge.

### (G) Names, addresses, and business associates.

The instant warrant authorized the seizure of a variety of materials regardless of any possible link to criminal activity, such as documents that would be used by any modern business and computer equipment. Clearly, items of this description could reveal names and addresses of anyone associated with the parties who worked or was associated with the searched premises. The court in *Washington*, 797 F.2d at 1473-74, held that a section of a 1981 federal search warrant was patently overbroad:

> "Finally, Washington objects to the fact that agents were authorized to search for and seize all 'evidence of association of RALPH WASHINGTON with the following persons, *but not limited to them*; namely, Deborah McConnell, Diane Hammerquist, Terri Griffith, Gloria Turner, Fredi Washington, Pamela McConnell and Leah Pangelina.
>
> "He contends that this section of the warrant is overbroad because *the agents could seize anything that associates Washington with any other person, regardless of any possible link to criminal activity. We agree*. A warrant that permits officers to seize evidence of association between a suspect and any other person *is patently overbroad*," Id., at 1473 [Emphasis added].

Subsequent to the 1981 federal warrant at issue in *Washington*, four federal warrants were issued in 1983. Washington challenged all of them as overbroad:

> "Washington contends that all four federal search warrants issued and executed in March 1983 were overbroad. One or another of these warrants authorized seizure of any paper 'indicating' Washington's association with prostitution; any document showing an employer/employee relationship between persons named and unnamed; evidence of Washington's association with anyone; any documents showing ownership of five different companies; any documents 'tending to show' the preparation of or basis for federal tax returns; and 'evidence and instrumentalities of commission of crime involving' 26 U.S.C. § 7206(1), 18 U.S.C. §§ 1341, 1503, 1962(a) and (c), and 1952(a)(3). *We hold* that the parts of the warrants that authorized the seizure of documents showing an employer/employee relationship between persons named and unnamed and of evidence of Washington's *association with anyone do not meet the particularity requirement of the Fourth Amendment*... [W]e also hold that these parts of the warrants are so facially deficient in particularity that the officers could not have acted in 'objectively reasonable' reliance upon them. See *Leon*, 104 S.Ct. at 3420," Id., at 1474.

The decision in *Washington* is directly applicable to this warrant. The property described in the warrant allowed the seizure of records showing the "associates" of the targets under investigation here, which the *Washington* court condemned.

In *Burrows v. Superior Court of San Bernadino County*, 118 Cal.Rptr. 166, 529 P.2d 590 (1974), the Supreme Court of California condemned the executing officers interpretation and execution of a warrant which only authorized a search for financial records relating to the persons involved in a specific transaction. The leading officer who conducted the search testified at the suppression hearing that he interpreted this direction in the disjunctive, so that, in his view, it authorized the seizure of papers relating not only to the persons named in the warrant, but also any financial records of Burrows without regard to the persons with whom the transactions had occurred or the date thereof. In reaching its decision, that court reminded the government that the "requirement of particularity is designed to prevent general exploratory searches which unreasonably interfere with a person's right to privacy." 529 P.2d at 597. It also provided examples of impermissible categories of documents to be seized:

> "In the implementation of these principles, the following descriptions of property have been held to be constitutionally intolerable: ***a listing of numerous documents by general categories***, such as 'checks, check stubs... and bank statements' followed by 'Any and all other records and paraphernalia connected with' the business of the suspect (*Aday v. Superior Court* (1961) 55 Cal.2d 789, 793-796, 13 Cal.Rptr. 415, 417-418, 362 P.2d 47, 49-50); 'personal goods and property, to wit, certain paraphernalia.' (*People v. Mayen* (1922) 188 Cal. 237, 242, 205 P. 435, 437.) 'Evidence of indebtedness' of the suspect, his telephone bills, and '***[a]ny papers showing names and addresses*** *of his associates* (*Griffin v. Superior Court* (1972) 26 Cal.App.3d 672, 692-696, 103 Cal.Rptr. 379, 392). In *Lockridge v. Superior Court* (1969) 275 Cal.App.2d 612, 625-626, 80 Cal.Rptr. 223, a warrant which failed to refer to specific items stolen from a jewelry store was held to be invalid for lack of particularity," Id., at 597.

Professor LaFave has discussed similar provisions of warrants:
> "Descriptions so sweeping as to authorize a general, exploratory search have been condemned, as where the <u>**warrant authorizes**</u> *a* <u>**search for any papers containing the names and addresses of the defendant's associates**</u>, any 'property tending to

establish the identity of persons in control... of the premises,' or 'any and all other records and paraphernalia' connected with a corporate defendant's business." [5]

See also *Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955 (3rd Cir. 1984)(warrant for law office authorizing seizure of files of all personal injury claimants and related documents was too broad); *Griffin v. Superior Court*, 26 Cal.App.3d 672, 103 Cal.Rptr. 379 (1972); *People v. Frank*, 38 Cal.3d 711, 214 Cal.Rptr. 801, 700 P.2d 415 (1985) (warrant for any "documentary evidence tending to show the whereabouts" of child on specified dates too broad: "it would inevitably be necessary for the police to rummage through *all* defendant's personal papers and read enough of each to learn its contents"); *State v. Kealoha*, 62 Hawaii 166, 613 P.2d 645 (1980) (this language "too closely resembles the wording of a forbidden 'general warrant'" and invites a strong intrusion into private papers and other personal effects); *Aday v. Superior Court*, 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47 (1961).

The officers executing the warrant here flagrantly disregarded whatever limitations were contained therein. Even assuming, arguendo, that the search was valid, the agents conducted an impermissible general search which requires the return of all materials seized during the search. In *United States v. Rettig*, 589 F.2d 418, 422-23 (9th Cir. 1978), the court examined a facially valid warrant which became an instrument for conducting a general search as interpreted and executed by the agents:

> "By failing to advise the judge of all the material facts, including the purpose of the search and its intended scope, the officers deprived him of the opportunity to exercise meaningful supervision over their conduct and to define the proper limits of the warrant. ... An examination of the books, papers, and personal possessions in a suspect's residence is an especially sensitive matter, calling for careful exercise of the magistrate's judicial supervision and control. *See Stanford v. Texas*...
>
> "We find the record establishes that ***the agents did not confine their search in good faith to the objects of the warrant***, and that while purporting to execute it,

---

[5] See 2 LaFave, § 4.6(d), at p. 250.