they substantially exceeded any reasonable interpretation of its provisions. ***As interpreted and executed by the agents, this warrant became an instrument for conducting a general search***. Under the circumstances, it is not possible for the court to identify after the fact the discrete items of evidence which would have been discovered had the agents kept their search within the bounds permitted by the warrant; and therefore all evidence seized during the search must be suppressed." [Emphasis added].

### III. THE SEIZED MATERIALS MUST BE SUPPRESSED AND RETURNED

**(A) Good faith and exceeding the scope of the warrant.**

It is entirely clear that the agents executing the warrant did not act in good faith as that term was explained in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984). Armed with this warrant already drawn in the broadest manner, the agents exceeded even that authority, thus violating Title 18, U.S.C., §2234[6]. Application of the "good faith" exception assumes "that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant."[7] To the best of the Plaintiff's knowledge every single space from basement to attic was checked. A pen belonging to one of the searchers was found in a bedroom drawer of women's underwear and it still reeked of men's cologne. According to the inventory left with the warrant (but NO affidavit) the searchers were in the home for more than 10 hours! The Supreme Court has thus held that the exclusionary rule would not apply when an officer acted "in objectively reasonable reliance on a subsequently invalidated search warrant..." Id., 468 U.S. at 922.

---

[6] 18 USC 2234 – Whoever, in executing a search warrant, willfully exceeds his authority or exercises it with unnecessary severity, shall be fined under this title or imprisoned not more than one year. The Plaintiff believes this warrant was executed with unnecessary severity when (according to witnesses) more than 20 agents with guns drawn stormed his residence while a helicopter hovered overhead making this a military occupation instead of an execution of a simple search warrant on a peaceful living soul.

[7] See *Leon*, 468 U.S. at 918 n. 19, 104 S.Ct. at 3418 n. 19.

In *United States v. Medlin*, 798 F.2d 407, 409 (10th Cir. 1986), that court explained the four situations in which the exclusionary rule under *Leon* would still apply:

"(1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit (citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978));

"(2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function (citing *Lo Ji. Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979));

"(3) the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring)); or

"(4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized (citing *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984))."

Therefore, the *Leon* exception does not apply in this case for at least two reasons. First, after the above analysis of *Leon*, the Tenth Circuit held in *Medlin I*, 798 F.2d at 410, that "*Leon* does not apply to issues of improper execution of warrants." The *Medlin I* court quoted Professor LaFave:

"Fourth Amendment violations relating to *execution* of the warrant are unaffected by *Leon*, as is reflected by ***the majority's caution that its discussion 'assumes, of course, that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant***.' Accordingly, *Leon* cannot be invoked in the prosecution's favor on such issues as whether the warrant was executed in a timely fashion, whether entry without prior notice of authority and purpose to execute the warrant was permissible (when not authorized by the warrant itself), whether certain persons were properly detained or searched incident to execution of the warrant, whether the scope and intensity and duration of the warrant execution were excessive, and whether certain items not named in the warrant were properly seized."

"LaFave, '*The Seductive Call of Expediency': United States v. Leon, It's Rationale and Ramifications*, 1984 U.Ill.L.Rev. 895, 915-16 (1984) (quoting *Leon*, 468 U.S. at 918 n. 19, 104 S.Ct. at 3419 n. 19)." [Emphasis added].

The *Medlin I* court then determined that "[u]nlike cases in which the police properly execute an invalid warrant that they reasonably thought was valid, in cases of improper execution there is police conduct that **must** be deterred." 798 F.2d at 410.

Following *Medlin I*, the Tenth Circuit in *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988), held that "[w]hen law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant." In *Medlin I*, the Tenth Circuit noted *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210 (1984); *United States v. Crozier*, 777 F.2d 1376 (9th Cir. 1985); *Marvin v. United States*, 732 F.2d 669 (8th Cir. 1984); *United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982); *United States v. Wuagneuz*, 683 F.2d 1343 (11th Cir. 1982); *United States v. Heldt*, 668 F.2d 1238 (D.C.Cir. 1981); and *United States v. Rettig*, 589 F.2d 418 (9th Cir. 1978), as authority for the proposition that even evidence which is properly seized pursuant to a warrant must be suppressed if the officers executing the warrant exhibit "flagrant disregard" for its terms.[8] Therefore, the seized materials in this case must be returned since the executing officers failed to properly execute the warrant.

### (B) Good faith and the overbroad warrant.

Second, the "good faith" exception does not apply to an overbroad warrant. The application of the "good faith" exception to an overbroad warrant was considered in

---

[8] Upon remand to the Northern District of Oklahoma, Judge Ellison found that the warrant issued to the ATF agents was executed with flagrant disregard for its terms and suppressed all the evidence seized including the firearms which were particularly named in the warrant.

*United States v. Crozier*, 777 F.2d 1376, 1379 (9th Cir. 1985), where the government executed a warrant "that did not describe any particular property to be seized; it merely authorized the seizure of 'Material evidence of violation 21 U.S.C. 841, 846.'" The court found the warrant facially overbroad and held that the agent could not reasonably rely on it. Id. at 1381.[9] Specifically, the agent in *Crozier* failed to make the warrant as particular as the information available would allow and "obtained no specific assurance from the magistrate that the overbroad warrant was acceptable." The *Crozier* court then applied the exclusionary rule to deter the police from relying on overbroad warrants. *Crozier*, 777 F.2d at 1382.

The Ninth Circuit reached the same conclusion in *Spilotro*, supra, where the warrant authorized the search and seizure of property and records which were "evidence of violations" of a list of federal criminal statutes. 800 F.2d at 961. The court relied on *Crozier* to find that the "good faith" exception was inapplicable to a facially overbroad warrant. See also *Washington*, 797 F.2d at 1473 ("the overbroad sections of the... warrant are so facially deficient that any evidence obtained in reliance upon either of them must be suppressed").

The First Circuit has adopted similar reasoning. In *United States v. Fuccillo*, 808 F.2d 173, 177 (1st Cir. 1987), the court invalidated warrants that inadequately described the stolen goods to be seized. The court found that the "executing agents... had no 'physical criteria or detailed description in the warrant to enable them to determine what they might lawfully seize;'" (quoting *Montilla Records of Puerto Rico v. Morales*, 575 F.2d 324, 326-27 (1st Cir. 1978)). *Fuccillo* also determined that the "good faith"

---

[9] See also *Leary*, 846 F.2d at 607: "In contrast to the detective in *Sheppard*, he did not take 'every step that could reasonably be expected of him.'"(citing *Sheppard*, 468 U.S. at 989, 104 S.Ct. at 3428).

exception was inapplicable, but focused on a different aspect of *Leon*. The warrant in *Fuccillo* authorized the FBI to seize cartons of women's clothing and records related to those cartons. However, in executing the warrant, "the agents seized, in addition to the authorized cartons of women's clothing, racks of clothing, empty boxes, and most disturbing, two racks of men's clothing." Id. at 177-78. The court found the "good faith" exception inapplicable for three reasons. First, the agents exceeded the scope of the warrant. Second, the "agents were reckless in not including in the affidavit information which was known or easily accessible to them." Id. at 178. Finally, the warrant was "'so facially deficient... that the executing officers cannot reasonably presume it to be valid.'" Id. at 178 (quoting *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420).

In *United States v. Strand*, 761 F.2d 449 (8th Cir. 1985), the warrant authorized the search of an apartment for "stolen mail which is evidence of and the fruits of the crime of theft from the mail." Id. at 452. The postal inspectors executing the warrant found stolen mail, but also seized certain household items that matched items that had been reported missing. The court held that the "warrant authorized a search only for 'stolen mail,' and that it did not describe the other items to be seized with sufficient particularity to be valid under the Fourth Amendment." Id., at 453-54. The court then considered whether the evidence was admissible under the "good faith" exception, concluding that there was no "objectively reasonable basis for the postal inspectors... to have believed that the warrant... authorized the seizure of [the household] items" and that the exception did not apply. Id. at 456. First, the *Strand* court noted that the "seizure of ordinary household goods... went far beyond the seizure expressly authorized by the warrant." Second, the "seizure of household items... not only went beyond the seizure contemplated by the warrant, but also went far beyond the seizure contemplated by the affidavit." Id. at 457. Thus, the postal inspectors could not "reasonably believe" they had the authority to seize

the household items. The court also found "no showing of any good reason for the lack of more particularized description."

These cases have simply applied the Supreme Court's decision in *Leon*. The Court in *Leon* held that evidence seized by police officers acting in good faith pursuant to a facially valid warrant would be admissible even though the warrant was subsequently found to lack probable cause. The Court cautioned, however, that "[i]n so limiting the suppression remedy, we leave untouched the probable-cause standard and the various requirements for a valid warrant." 468 U.S. at 923. The Supreme Court expressly refused to apply the good-faith exception to warrants which fail to adequately specify the place to be searched or the items to be seized when it held that evidence must be suppressed if a warrant is "so facially deficient- i.e., in failing to particularize the place to be searched or the things to be seized- that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923. Furthermore, as argued above, the Court noted that its holding was based on an assumption "that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant." Id., at 918 n. 19. This language unequivocally reveals that application of the *Leon* exception to the exclusionary rule does not apply to facially overbroad warrants or to searches which exceed the scope of the warrant. See also *United States v. Curzi*, 867 F.2d 36, 44 (1st Cir. 1989) ("the good faith exception... will not be applied unless the officers executing search warrants, ***at the very minimum***, act within the scope of the warrants and abide by their terms"); *Stubbs*, 873 F.2d at 212 (the good faith exception is not available where the executing officer simply could not have reasonably relied on a facially deficient warrant; the warrant was not facially valid, and thus could not have been relied upon in good faith as valid); *United States v. Dozier*, 844 F.2d 701, 708 (9th Cir. 1988); *United States v. Christine*, 687 F.2d 749, 758 (3d Cir. 1982) (all evidence seized pursuant to a general warrant must be suppressed); *Rettig*, 589 F.2d at 423.

Furthermore, "the government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable." *Leary*, 846 F.2d 607 n. 26 (quoting *United States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir. 1986)). See also *United States v. Kow*, 58 F.3d 423 (9th Cir. 1995).

These cases simply recognize that a reasonably well trained officer should know that a warrant must provide guidelines for determining what evidence may be seized, and the courts will apply the exclusionary rule to deter the police from relying on an overbroad warrant proscribed by the Fourth Amendment. As stated by Professor LaFave:

> "One might argue, of course, that a facially deficient warrant is bad precisely because the description is not 'such that the officer with a search warrant can, with reasonable effort ascertain and identify' the place or thing referred to, and that whenever **the officer finds himself in this predicament he can hardly be reasonably relying on the warrant**. That is, **the lack of particularity in the warrant tells the officer he has been given insufficient direction**, and thus he can hardly reasonably rely upon that warrant," 1 LaFave, § 1.3(f), at 70.[10] [Emphasis added].

### SUMMARY OF THE FACTS

On March 19, 2004, IRS Special Agent David Toy appeared before United States Magistrate Judge Judith G. Dein and submitted affidavits to execute a search warrant on the home of Charles William Adams and Marie Louise Adams and their children located at 221 Madison Street, Wrentham Massachusetts. Whether or not Special Agent Toy had first hand knowledge for securing a warrant on a home is unknown as to the all inquiries of the Plaintiff for documents relating to this search are

28

still sealed according to the Clerks of the Court including but not limited to dockets, affidavits, motions and briefs. Agent Toy sought to seize a variety of items described in the broadest of terms:

"1. The following records and documents for the entities and individuals named below:
    Charles W. Adams
    Charles Adams
    Charlie Adams
    Charlie Andrews
    Marie L. Adams
    Marie Adams
    Marie Andrews
    Marie O'Neil
    Citizens Systems Consult
    Commonwealth Management
    Computer Systems Consulting Limited Partnership
    Consulting Development Associated Limited Partnership
    LIZ4TOG Associated Limited Partnership
    Norfolk Automation
    Contract America, LTD
    Save-A-Patriot Fellowship
Names identified on Subscriber Affidavits:
    Charles Adams / Citizens Systems Consult
    Clarence Albridge / Blue Tech Enterprises
    Billie Andrews / Aaron Enterprises
    Billie Andrews / L.S. Enterprises
    Billie Andrews / Warner Associates
    Billie Betts Andrews
    Ralph Bass / Ralph & Cindy Bass
    Dr. Sandy Bradley V.M.D. / Doc Bradley
    Jerry J. Brunette / Erba and Agri-Dynamics
    Lawrence Casey / International Telecommunications Marketing
    Eric Fiegl / Wilcox Enterprises
    Joseph P. Forst
    Nicholas Four / Nicholas Four: Reitter
    Sean C. Johnson / Olympus Group, Ltd.

---

[10] See also 2 LaFave, 4.6(f) - "If no portion of the warrant is sufficiently particularized to pass constitutional muster, then total suppression is required."

29

Barry L. Lee / B&B Computers or B&B Computers, Inc.
Paul McQuaid / International Research Services
Thomas F. Monteleono / Borderline Press
Tom Monteleone / T.F. Monteleone
Shawn Murphey / Distributed Services
Shawn Murphey / Service Partners Limited Partnership
Marlena Phillips
William (Bill) E. Renfield
Michelle Rusch / Sarah Rusch (daughter)
Sheri D. Toliver / The Toliver Family Estate
Arthur Torrey
Clayton Group
Napier Management
Vesper Valley Farms
Scott Alcock / ScottCo Enterprises
Lynton Ballentine
Frank Benlin / American Contracting Services
Rick Benson / Rick's Auto Glass
Tom Christiansen / T.C. Contractors
Marianna Dion / Financial Factors, LTD
Scott Dion / Northeast Enterprises
William Dion / Granite Trust
William Dion / Trustee of Mass Realty Trust
William Dion / Your Virtual Office
John Fall / Revenue Management Services
George Fenzell
George Fenzell / River Valley Dental
Catherine Floyd / BEST Seminars
Catherine Floyd / Matara Enterprises
Norman R. Grace / NRG
Karen Graefe / Pyramid / Chem-Tron
Ron Graefe / Thermodyne
Glen Hampton / Developp Le Baron
Glen Hampton / LTC Program Designs
Kevin Horner / K. Horner Roofing
William Humphreys / Construction Concepts
John B. Kotmair / Liberty Works Radio Network
Jerry Lahr / FFA or Financial Fortress Associates
Bruce Lapierre / Banner Technologies
Shawn Murphey / Business Management Services
Gordon Phillips / Intelligent Radio Solutions
David Phillips

   Bill Redfield / Mystic Voyager Trust
   Bill Redfield / Spiritual Yankee Trust
   R. Bryan Rusch / Capital Trust Group
   Margaret Watson
   Leon Weishaar
   Rhonda Weishaar
   Dr. Herbert Yolin / 21st Century Dental
   Happy Hollow Farms
   Michael J. Walsh/Law Offices of Michael J. Walsh Esq.

Names identified as relating to Mountain Management checking account:

1. Advanced Enterprises
2. AJA Realty Corporation
3. Alex Management Corporation
4. Allodial Holdings
5. B2B Marketing/Jim Peterson
6. Banner Technologies
7. Barkmulch and Loam Company
8. Blue Teck Enterprises
9. Business Management Systems
10. BVM/Powell Woods
11. Calico Management, Inc./Myron Thorrick
12. Capital Trust Group
13. Comprehensive Services, LP
14. Digital Library Resources
15. Dr. George Fenzell
16. Dr. Herb Yolin
17. Financial Factors, Inc.
18. Freebourne Holdings
19. G&K Trucking Company
20. Granite Trust
21. Haleakala Pacific
22. Jubilee
23. Northeast Dental
24. Mass Realty Trust
25. Metal tech, LP
26. Office Services
27. Onyx Foundation
28. Revenue Management
29. River Valley Staples
30. Scottco
31. Service Partners, LP
32. Software Quality Assurance Associates, Inc.

33. Syndyne, Inc.
34. Talent Management
35. Torn/The Other Radio Network
36. Thoughtful Energy Products
37. Tri-State Machine
38. Validus Research & Information
39. World Wide Health, Inc.
40. Your Virtual Office

Names under which and/or for which William Dion Conducts Business:

    William Dion
    Scott Sion
    Marianna Dion
    Mark Gulino
    Tri-State Machine
    Tri-State Products
    Tri-State Investments
    Granite Trust
    American Contracting Services or ACS
    Mass Realty Trust or MRT
    Capital Trust Group or CTG
    PT Resources or PT Resource Center
    The Virtual Office or YVO
    Scott Magillacuty
    Mountain Management
    Talent Management
    Northeast Systems, Inc. or Northeast Enterprises

a. To include all books and records, including general ledgers, cash receipts journals, cash disbursement journals, bank statements, cancelled checks and deposit tickets, and

b. To further include any and all records and documents relating to accounts receivable and accounts payable, which include but is not limited to checks, invoices, credit and billing records, credit cards, bank statements, deposit slips and deposit items, cancelled checks, loan records, financial statements, wire transfer applications and advises, certificates of deposits and monetary

32

instruments, credit card slips and statements, safe deposit box rental and payment documents, safe deposit box keys, journals, ledgers, books and workpapers, bills, investment accounts, notes, facsimile transmissions relating to obtaining, transferring or secreting of money and

c. To further include any and all bank loan records, including but not limited to loan applications, loan agreements, notes, certificates of deposit, payment records, delinquent payment records, brokerage accounts, notes receivable, notes payable, stock certificates, account statements, interest and dividend reports and account activity reports and

d. To further include any and all IRS Forms to include Federal Income Tax returns, Forms W-2 and Forms 1099, and

e. To further include any and all corporate kits, stock books, shareholder meeting minutes, stockholder agreements, articles of incorporation and bylaws, and

f. To further include any and all records and documents relating to income and/or commissions, earnings, payroll transactions, payroll documents and all other records of compensation, and

g. To further include any and all records and documents concerning partnership agreements, current and former partners and current and former employees, which documents include payroll receipts, financial statements, payroll records and Federal and State income tax filings and returns, and

h. To further include any and all records of Post Office Boxes and/or mail drops, and

i. To further include and all written correspondence (copies or originals) including letters, faxes, and e-mail transmissions regarding the fraudulent schemes identified in this affidavit.

j. Computer and electronic equipment: including, but not limited to, any and all information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by computer. These media include floppy disks, fixed hard disks, removable hard disk cartridges, tapes, laser disks and other media capable of storing magnetic coding, provided that the information and data to be seized shall be limited as defined in #k below

k. Any and all electronic devises which are capable of analyzing, creating, displaying, converting, or transmitting magnetic or electronic computer data, including computer and computer components, monitors, hard drives, and other computer related electronic devices, provided, that the information and data to be seized (after such reviews as may be necessary to identify such data and information) shall be limited to materials described in subparagraphs a through i.

The investigation to date reflects activities involving federal tax matters for calendar years 1996 to the present. Unless otherwise stated, all the above listed items to be

seized shall have been created, acquired, or shall refer or contain information referring to the period January 1, 1996 through the present.

All of the above being evidence, fruits, and instrumentalities of violations of Title 26, United States Code, Section 7201 (Tax Evasion), Title 26, United States Code, Section 7203 (Failure To File), Title 18, United States Code, Section 371 (Conspiracy) and Title 18, United States Code, Section 1341 (Mail Fraud)."

Based upon information contained in those affidavits that the plaintiff has been told are still sealed, Magistrate Judge Judith G. Dein signed the warrant which was executed on March 23, 2004.

## **CONCLUSION**

The search warrant here was invalid since its scope probably exceeded any probable cause demonstrated by the David Toy affidavit(s)s that the Plaintiff still cannot get. Further during execution of the warrant, the searching agents exercised discretion regarding what items were to be seized, demonstrating uncertainty of the description of the evidence to secure. Also the Plaintiff still cannot get a copy of the affidavit which should have been attached to the warrant. For these reasons, the items seized via this warrant must be suppressed and returned to Petitioners.

Finally, the Supreme Court of the United States of America clearly defends my status of Sovereignty in the famous decision of *Yick Wo v. Hopkins* 118 U.S. 356, 370 (1886) when Justice Mathews in delivering the opinion of the court wrote the following in the Lead Opinion. "When we consider the nature and the theory of our

institutions of government, the principles upon which they are supposed [118 U.S. 370] to rest, and review the history of their development, **we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power. Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but, in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts. And the law is the definition and limitation of power.** It is, indeed, quite true that there must always be lodged somewhere, and in some person or body, the authority of final decision, and in many cases of mere administration, the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion or by means of the suffrage. But the fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts Bill of Rights, the government of the commonwealth "may be a government of laws, and not of men." **For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life at the mere will of another seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself."** [Emphasis Mine]

## Demand For Relief

Wherefore, Plaintiff demands this court execute the included proposed order within 30 days to suppress search warrant 04M-1053-JGD as being defective on its face due to the illegal rummaging and seizer of items and things not in the aforementioned search warrants leaving no discretion of the government agents seizing such items and both warrants 04M-1053-JGD and 04M-1055-JGD as no copy of the affidavits supporting the warrant was attached to the warrants or even left for the Plaintiff and is still not available to him and order the Government to immediately return all property seized and suppress any evidence that may be the fruits of this unlawful search and seizure.

Respectfully submitted this 12th day of May, 2004,

_____
Charles William Adams, Plaintiff
221 Madison Street
Wrentham, Massachusetts 02093