**SEALED**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLES WILLIAM ADAMS,  )
                                                )
              Plaintiff,             )
        v.                               )         MBD NO.  04-10193-RWZ
                                                )
THE UNITED STATES OF         )
AMERICA, et al.,                     )
                                                )
              Defendants.          )


# REPORT AND RECOMMENDATION ON MOTIONS FOR RETURN OF SEIZED PROPERTY AND VARIOUS OTHER MOTIONS

September 3, 2004

DEIN, U.S.M.J.

## I.  INTRODUCTION

On March 23, 2004, in connection with an ongoing tax evasion, mail fraud, and conspiracy investigation, Internal Revenue Service (the "IRS" or "government") agents executed two search warrants issued by this court at the residence of the plaintiff, Charles Adams ("Adams"), at which time various items were seized.  This matter is presently before the court on two Motions for Return of Seized Property Adams has filed pursuant to Fed. R. Crim. P. 41(g), which allows "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property [to] move for the property's return."

 (Docket ## 1, 6) (the "First Motion for Return" and the "Second Motion for Return,"

respectively).  Between the two Motions, Adams contends that (1) the agents seized

property which they failed to include in the required inventories, (2) the government

violated Fed. R. Crim. P. 41(f)(2) because the inventories were not prepared in the

presence of at least one other "credible person," and (3) one of the warrants is invalid for

a number of additional reasons discussed below.  Adams also has filed an "Emergency

Petition for Declaratory Judgment" (Docket # 16) and an "Emergency Petition for Writ of

Quo Warranto" (Docket # 17), in which he makes wide-sweeping allegations and rather

rambling arguments.  In addition, he has filed a "Motion for Summary Judgment" (Docket

# 11) wherein he seeks an address change and to have judgment entered against the

government for failing to file a timely opposition to the Second Motion for Return.

Adams has filed all of his motions pro se.  For the reasons detailed herein, this court

recommends to the District Judge to whom this case is assigned that all of Adams'

Motions be DENIED in their entirety, except that the Docket should be amended to

reflect his new address.

## II.  **STATEMENT OF FACTS**[1]

On March 19, 2004, Special Agent David Toy ("Agent Toy"), a member of the

Internal Revenue Service Criminal Investigation Division (the "CID"), presented an

Application and Affidavit for Search Warrant in re 221 Madison Street, Wrentham,

Massachusetts; Adams' home.  (Application and Affidavit for Search Warrant No.

04M-1053-JGD ("First Application"); Toy 8/12/04 Aff. ¶ 1).  The IRS was investigating

alleged violations of 26 U.S.C. § 7201 (tax evasion), 26 U.S.C. § 7203 (failure to file),

18 U.S.C. § 371 (conspiracy), and 18 U.S.C. § 1341 (mail fraud).  (Search Warrant No.

04M-1053-JGD (the "First Warrant") Ex. B; Niro Aff. ¶ 3).  After review by this court,

the Search Warrant was issued on March 19, 2004.  The "Items To Be Seized" were

listed in Exhibit B to the warrant.

On March 22, 2004, Agent Toy briefed the agents who were to participate in the

execution of the First Warrant on the status of the ongoing investigation.  (Niro Aff. ¶ 3).

The executing agents were also required to read the Supporting Affidavit in its entirety to

learn the nature of the investigation and the types of documents covered by the First

---

[1]  The following facts are limited to those relevant to the instant Motions and are drawn primarily from (1) Agent David Toy's 5/14/04 Affidavit (attached to Docket # 5); (2) Agent Toy's 8/12/04 Affidavit (Docket # 15 Ex. A); (3) Agent Troy Niro's 8/11/04 Affidavit (Docket # 15 Ex. B); (4) Adams' 4/19/04 Affidavit (Docket # 3); and (5) Adams' 5/12/04 Affidavit (Docket # 8).  In addition, Agent Toy executed an affidavit in support of the application for the first search warrant (No. 04M-1053-JGD) and Agent Michael J. Leahey executed an affidavit in support of the application for the second search warrant (No. 04M-1055-JGD).  These affidavits remain under seal.

Warrant.  (Toy 8/12/04 Aff. ¶ 4; Niro Aff. ¶ 3).  Agent Niro, also a member of the CID, was appointed the "Seizing Agent" and was present during the briefing.  (Niro Aff. ¶¶ 1, 3).  He reviewed the Supporting Affidavit, as well as the First Warrant, including the Items To Be Seized.  (Niro Aff. ¶¶ 1, 3).

The next day, March 23, 2004, at approximately 9:00 AM, nine federal agents executed the First Warrant.  (Toy 8/12/04 Aff. ¶¶ 5-6, 18).  Agents Toy, Niro, and Christopher Waskey ("Waskey") were among those present during the execution.  (Toy 8/12/04 Aff. ¶ 5; Niro Aff. ¶¶ 4, 7).  Neither Adams, his wife, nor his children were home at the time of the search, and the house was otherwise unoccupied.  (Adams 5/12/04 Aff. ¶ 4).  Thus, after knocking on the door and receiving no answer, the agents made forcible entry through the front door by bending an interior slide bolt.  (Toy 8/12/04 Aff. ¶ 6(a)).

Upon entry, the agents identified evidence that was subject to the First Warrant. (Niro Aff. ¶ 8).  The agents then collected and labeled any evidence seized using standard IRS evidence envelopes.  (Niro Aff. ¶ 8).  The evidence and envelopes were collected and given to Agents Waskey and Niro.  (Niro Aff. ¶ 8).  Thereafter, Agent Niro, inter alia, verified that a given item of evidence was also an item described in the Items To Be Seized list.  (Niro Aff. ¶ 9).

During the search, agents observed a binder in plain view entitled "The Use and Advantages of Pure Trust Organizations" (the "Binder"), which they believed was not

covered by the First Warrant.  (Toy 8/12/04 Aff. ¶ 7; Niro Aff. ¶ 5).  The premises were

secured from approximately 5:00 to 6:00 PM while the government obtained an

additional warrant for the Binder.  (Toy 8/12/04 Aff. ¶ 19).  Thus, CID Special Agent

Michael Leahey ("Agent Leahey") presented an additional Application and Affidavit to

this court seeking authorization to seize only the Binder.  (Application and Affidavit for

Search Warrant No. 04M-1055-JGD at 1; Niro Aff. ¶ 8).  This court issued the second

warrant (the "Supplemental Warrant") at 5:30 PM.  (Supplemental Warrant at 1).

       The Agents then executed the Supplemental Warrant at or about 5:50 PM, and

seized the Binder.  (Toy 8/12/04 Aff. ¶¶ 10- 11; Supplemental Warrant Return).  Also on

March 23, 2004, in the presence of Agents Toy and Niro, Agent Waskey prepared and

verified two "Inventor(ies) Listing of All Items Seized at Search Warrant Site" detailing

the items seized pursuant to each Warrant (the "Inventories").  (Toy 8/12/04 Aff. ¶ 12;

Niro Aff. ¶ 11; First Warrant Inventory (included in Ex. B to First Warrant); Supple-

mental Warrant Inventory (attached to Supplemental Warrant)).  Agents Toy and Niro

each also verified the Inventories independently.  (Toy 8/12/04 Aff. ¶ 13; Niro Aff. ¶ 12).

       The search concluded at approximately 6:00 PM, at which time the agents left the

premises.  (Toy 8/12/04 Aff. ¶ 17; Niro Aff. ¶ 15).  Before leaving, the agents left copies

of both Warrants and both Inventories at Adams' residence.  (Toy 8/12/04 Aff. ¶ 14; Niro

Aff. ¶ 14).  Adams originally claimed that there were items taken in the search that were

not covered by the Warrants and that did not appear on the Inventories, including

firearms, blank checks, trusts, and "private documents." (Adams 5/12/04 Aff. ¶ 5).[2] For

its part, the government responded that the firearms were not seized, but rather, were

secured and delivered to the Wrentham Police Department since the house would be

unsecured after the agents left. (Toy 8/12/04 Aff. ¶ 15). The agents left Adams a note

informing him what they had done with his firearms. (Toy 8/12/04 Aff. ¶ 15). Adams

does not dispute the accuracy of the government's facts.

The evidence seized was taken to the IRS-CID office space to be secured. (Niro

Aff. ¶ 14). Agent Toy filed the two Inventories with this court on March 31, 2004. (Toy

8/12/04 Aff. ¶ 20). As of the date of this writing, no criminal charges have been brought

against Adams. (Second Motion for Return at 3).

## III.  DISCUSSION

### A.    The Allegedly Missing Items

In the First Motion for Return, Adams claims that certain items were taken which

did not appear in the Inventories, and which were, in his view, not relevant to the ongoing

investigation. (First Motion for Return at 2; First Mem. (Docket # 2) at 4). To the extent

that Adams identified specific items, the government addressed the items, identified

---

[2]  Although Adams originally claimed that his firearms license had been taken, in a recent
filing he conceded that it had not been removed. (Adams' Repy Mem. (Docket # 18) at 11). (See
also Toy 8/12/04 Aff ¶ 16 stating license was not removed).

whether or not they were taken in the search, and specified where they were listed in the Inventories. (Gov't First Opp. (Docket # 5) at 2-3). At this juncture, it appears that the items seized were authorized to be taken by the Warrants. In his first Reply Memorandum (Docket # 10), Adams did not address this claim any further, and this court is satisfied with the government's explanation. Consequently, to the extent that the First Motion for Return seeks the return of items allegedly not identified on the Inventories, this court recommends that the Motion be denied.

**B.      The "Credible Person" Requirement**

In the First Motion for Return Adams also contends that the property seized during the search should be returned because the agents violated Fed. R. Crim. P. 41(f)(2), which states:

> An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person.

According to Adams, the search of his premises did not comport with the Rule because the agents failed to have the Inventories verified by "at least one other credible person," as was required since he was not present. Adams' assertion is based on the belief that Agent Toy, who applied for the First Warrant, was the only person present during the preparation and verification of the Inventories. In addition, Adams contends that, by

definition, a government agent cannot be the credible person due to inherent biases. This court finds these arguments to be without merit.

As an initial matter, Toy was not the sole officer present. Rather, "another officer" (Toy) and "at least one other credible person" (Niro) were present and verified the Inventories prepared by Agent Waskey. Agent Niro's status as a government agent does not <u>per se</u> disqualify him from serving as the "other credible person." <u>See</u> <u>United States v. Khan</u>, No. 92 Cr. 274 (LMM), 1992 WL 249907, at *1 (S.D.N.Y. Sept. 18, 1992) (unpublished op.) (fact that inventory was made "in the presence of agents" satisfied credible person requirement), <u>aff'd</u> (without op.), 23 F.3d 396 (2d Cir. 1994). Having reviewed the sworn statements, this court finds that Agent Niro was, in fact, present. The fact that Agent Niro was not mentioned anywhere on the Returns does not require a different result since Rule 41(f)(2) (formerly Rule 41(d)) "does not require that the 'credible person' be identified by name on the return." <u>Id.</u>

Second, even assuming, <u>arguendo</u>, that the agents in the instant case failed to properly prepare and verify the Inventories, such an omission would not be fatal to the search since "[v]iolations of Rule 41[(f)] are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice . . . . To show prejudice, defendants must show that they were subjected to a search that might not have occurred or would not have been so abrasive had [Rule 41(f)] been followed." <u>United States v. Bonner</u>, 808 F.2d 864, 869 (1st Cir. 1986) (internal citation and quotation omitted), <u>cert. denied sub nom.</u>, <u>Bonner v. United States</u>, 481 U.S. 1006, 107 S. Ct. 1632,

-8-

95 L. Ed. 2d 205 (1987); accord United States v. Dudek, 530 F.2d 684, 688 (6th Cir.

1976) ("Clearly, failure to follow the requirements of Rule 41 of the Federal Rules of

Criminal Procedure pertaining to inventory of objects seized and a prompt return to the

court has been held not to require invalidation of an otherwise properly issued and

executed search warrant or the suppression of evidence acquired under it."), and cases

cited; United States v. Gross, 137 F. Supp. 244, 248-49 (S.D.N.Y. 1956) (since Rule

41(f)'s requirements are ministerial, government's failure to, inter alia, take an inventory

and make a return did not invalidate search; government granted leave to cure defects).

Since Adams cannot establish that the search would have been conducted differently or

that he has been prejudiced by the manner in which the inventory was prepared, Adams'

challenge based on Rule 41(f) should fail.[3]

### C.    The Challenges to the First Warrant

In the Second Motion for Return, Adams contends that the First Warrant is facially

defective since it lacks the particularity required by the Fourth Amendment; the agents

exceeded the scope of the First Warrant; both Warrants are inadequate since no

---

[3] The government also mentions that Adams has challenged the seizure of the Binder on the grounds that the search was conducted before the government had obtained the Supplemental Warrant. (Gov't Second Opp. at 3). As far as the court can tell, Adams only referenced this issue in passing in his Affidavit. (Adams 5/12/04 Aff. ¶ 3). Assuming, arguendo, that this cursory reference is sufficient to raise the issue, it is without support. The record indicates that the Supplemental Warrant was issued by this court at approximately 5:30 PM and executed at 5:50 PM. Thus, the government had obtained the Warrant first. Even if the Supplemental Warrant was not actually delivered to the agents after it was issued, but prior to the search for the Binder, that would not invalidate the search since a warrant need not be "in the agents' physical possession at the time of entry." United States v. Bonner, 808 F.2d at 868-69.

supporting affidavits were attached to them; and the First Warrant exceeded the scope of any underlying probable cause that existed.  In connection with his particularity challenge, Adams has raised a myriad of grounds as to why the First Warrant is invalid. While he has done an impressive job of canvassing the case law, Adams has misapplied the relevant rules and taken holdings out of context.  Having carefully reviewed the challenges raised, this court recommends that Adams' Motion be denied.

The Fourth Amendment provides in relevant part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  This provision "prevents the seizure of one thing under a warrant describing another."  United States v. Scott, 83 F. Supp. 2d 187, 198 (D. Mass. 2000) (internal citation and quotation omitted).  "Further, a particular warrant inform[s] the person subject to the search and seizure what the officers are entitled to take."  Id. (citation omitted) (alteration in original).  "The manifest purpose of the particularity requirement of the Fourth Amendment is to prevent wide-ranging general searches by the police."  United States v. Bonner, 808 F.2d at 866.  Thus, "[t]he Fourth Amendment forbids general warrants so as to prevent law enforcement officers from rummaging through an individual's belongings at will."  United States v. Beckett, 321 F.3d 26, 33 (1st Cir. 2003).  However, "[t]hat agents may have to perform some initial screening to locate the particularized documents does not render the warrant unconsti- tutional."  Id.  "The cases on 'particularity' are actually concerned with at least two rather different problems: one is whether the warrant supplies enough information to guide and

control the agent's judgment in selecting what to take . . . and the other is whether the category as specified is too broad in the sense that it includes items that should not be seized." United States v. Scott, 83 F. Supp. 2d at 198-99 (internal citation and quotation omitted) (alteration in original).

As detailed below, applying these principles to the instant case requires that Adams' Second Motion for Return be denied.

### 1. Overbreadth

Adams' main contention is that the First Warrant authorized a "general search" of his home and the seizure of all his business documents without drawing any distinction between legal and illicit files, or giving the executing agents any guidance on how to make such a determination. (Second Mem. (Docket # 7) at 2-6, 8, 13-17). This argument fails, however, because the items to be seized are identified with particularity. Moreover, even if the warrant is deemed to be a "general" one for books and records, where, as here, "there is probable cause to find that there exists a pervasive scheme to defraud, all the business records of an enterprise may be seized, if they are, as here, accurately described so that the executing officers have no need to exercise their own judgment as to what should be seized." United States v. Falon, 959 F.2d 1143, 1146 (1st Cir. 1992) (quoting United States v. Brien, 617 F.2d 299, 309 (1st Cir. 1980)).

As detailed in Agent Toy's Supporting Affidavit, the businesses to which Adams was linked by other evidence discovered prior to the search revealed that the entities involved in the fraudulent schemes were designed for the purpose of evading taxes; there

is no evidence that any of them involve any legitimate activities.  Thus, it was appropriate

for the First Warrant to cover broad categories of documents.  Compare Application of

Lafayette Academy, Inc., 610 F.2d 1, 5-6 (1st Cir. 1979) (warrant overbroad where

suspected illicit activity only comprised part of defendant's business).

Moreover, even though the "all records doctrine" must be applied with caution

"when an individual's allegedly fraudulent business activities are centered in his home,"

United States v. Falon, 959 F.2d at 1148, in the instant case, the Warrant carefully

delineated the categories of items to be seized.  Thus:

> [t]he warrant breaks the items into categories.  Each item is plausibly
> related to the crime-[tax evasion based crimes]-that is specifically set
> out.  The items, for the most part, are the very instrumentalities of
> those crimes. The items are not likely to be mixed up with a far
> larger set of similar, but innocent, items as if, for example, they were
> in an accountant's office.  The [First Warrant] provide[s] a standard
> for segregating the "innocent" from the "culpable" in the form of
> requiring a connection with a specific, identifiable crime.  The
> affidavit[ ] suggest[s] the executing officers will be able to use that
> standard.

United States v. Timpani, 665 F.2d 1, 5 (1st Cir. 1981).  In the instant case, the Warrant

"undertook to narrow and identify the documents subject to seizure, breaking them down

into specific categories," "restricted seizable materials to documents relating to . . .

named individuals" and "identified with some particularity the object of the conspiracy

under investigation," all of which sufficiently limited the scope of the search and

"minimized the likelihood of random excursions by the executing officers."  United

States v. Bithoney, 631 F.2d 1, 2 (1st Cir. 1980), cert. denied, 446 U.S. 919, 100 S. Ct.

1854, 64 L. Ed. 2d 273 (1981). The First Warrant also limits the items to be seized to a specific time-period – January 1, 1996 to the present – which further supports the conclusion that it meets the particularity requirement. See, e.g., United States v. Scott, 83 F. Supp. 2d at 199-200 (while not required, temporal limits help make a warrant sufficiently particular).

Finally, even if the First Warrant could be said to contain only a "generic description," such a description would still be constitutionally sound in the instant case since the description is as detailed as can be expected under the circumstances. See United States v. Cortellesso, 601 F.2d 28, 31 (1st Cir. 1979) (citing United States v. Klein, 565 F.2d at 188)), cert. denied sub nom., Cortellesso v. United States, 444 U.S. 1072, 100 S. Ct. 1016, 62 L. Ed. 2d 753 (1980) (recognizing that "in some cases general descriptions are sufficient"). For all these reasons, the First Warrant did not authorize an unconstitutional general search.

## 2.    The Initial Probable Cause Determination

Adams contends that the scope of the search authorized by the First Warrant exceeded the scope any probable cause that existed since it authorized such a broad search. (Second Mem. at 6-9). At the time Agent Toy submitted the First Application, under the totality of the circumstances stated in his Supporting Affidavit, this court found, and continues to find, that the government "demonstrate[d] probable cause to believe that (1) a particular person has committed a crime (the 'commission' element), and (2) enumerated evidence of the offense [would] be found at the place to be searched (the

'nexus' element)." United States v. Beckett, 321 F.3d at 31.  Again, the government has

shown that Adams was involved in a far reaching and widespread tax evasion schemes

involving, inter alia, the mail and the telephone.  Moreover, prior to applying for the First

Warrant the government had collected documents and other evidence linking Adams to

the schemes, much of which had been sent or received via the mail.  Therefore, probable

cause was sufficiently established to support the issuance of the Warrant.

### 3.    The Scope of the Search

Adams asserts that, assuming, arguendo, there was probable cause to support the

breadth of the First Warrant, the agents exceeded their authorization by seizing more

items than permitted.  (Second Mem. at 15-16, 20).  As a general statement, all items

seized during the execution of a valid search warrant must be within the scope of the

warrant's underlying probable cause.  See, e.g., United States v. Albert, 195 F. Supp. 2d

267, 279-80 (D. Mass. 2002).  In the instant case, it appears that all items seized "are

included within the descriptions in [Attachment B], and, as stated above, [Attachment B]

is sufficiently particular and supported by probable cause."  Id. at 280 (based on defen-

dant's challenge to scope of search, court upholds seizure of some items as they were

included in attached schedule of items to be seized, but invalidates seizure of other items

that exceeded warrant's scope).  (See Niro Aff. ¶ 9).  Adams has not identified any

specific documents which were seized which were beyond the scope of the warrant.  His

general complaint is without merit.

4.    <u>Lack of Affidavits</u>

Adams contends that both Warrants are invalid since neither had a supporting affidavit attached.  (Second Mem. at 11-13, 37).  However, there is no requirement that an affidavit must be attached to an otherwise valid warrant.  <u>Cf.</u> <u>United States v. Falon</u>, 959 F.2d at 1145, 1148-49 (although affidavit not attached to warrant, items validly seized pursuant to warrant).  In the instant case, as detailed above, standing alone the Warrants satisfy the Fourth Amendment's particularity requirement.  Accordingly, this argument fails.

5.    <u>Inadequate References to Federal Statutes</u>

Adams claims that the First Warrant's references to the federal statutes he is alleged to have violated are insufficient to satisfy the particularity requirement.  However, as his own Second Memorandum makes clear, Adams has taken this legal principal out of context and cites cases in which the <u>only</u> limitation on the search warrant was the reference to the alleged statutory violations.  (Second Mem. at 9-11).  As detailed above, the First Warrant contained many additional limitations on the types of items that could be seized.  Thus, the reference to the statutes was just an additional limitation to ensure the validity of the Warrant.  <u>See</u> <u>United States v. Albert</u>, 195 F. Supp. 2d at 276 (no need to specify criminal offense where warrant is otherwise sufficiently particular).

### 6.    <u>The Impermissible Inclusion of Evidence of Associations</u>

Adams argues that as a corollary of the First Warrant's overbreadth, the subsequent search could have revealed names and addresses of anyone associated with him or the premises, even if they had no connection to criminal activity.  (Second Mem. at 17-20).  This assertion fails since, again, the Warrant was sufficiently particular and authorized seizure only of evidence for which probable cause had been established.  <u>Cf.</u> <u>United States v. Bithoney</u>, 631 F.2d at 3 (since warrant contained sufficient limiting language which qualified other provisions, court rejected defendant's "hypertechnical" reading of warrant as allowing government to seize any documents relating to individuals named).  Moreover, <u>United States v. Washington</u>, 797 F.2d 1461, 1474 (9th Cir. 1986), on which Adams relies, is inapposite since there, unlike the instant case, the warrant authorized seizure of, <u>inter</u> <u>alia</u>, "evidence of [the defendant's] association with anyone[.]"

### 7.    <u>The Lack of Good Faith</u>

Adams also asserts that the government cannot rely on the so called "good faith" exception which provides that, in general, "[e]vidence seized by officers who rely reasonably on a warrant issued by a detached and neutral magistrate should not be excluded," even if the warrant is later found invalid.  <u>United States v. Albert</u>, 195 F. Supp. 2d at 274 (citing <u>United States v. Leon</u>, 468 U.S. 897, 913, 104 S. Ct. 3405, 3415, 82 L. Ed. 2d 677 (1984)).  (Second Mem. at 21-27).  However, for the reasons detailed above, the First Warrant is valid and thus, the government need not rely on the <u>Leon</u>

exception.  Assuming, <u>arguendo</u>, the First Warrant were found invalid, there is no

evidence that any of the following exclusions to the good-faith exception apply here:

> (1) When the magistrate ... was misled by information in an affidavit
> that the affiant knew was false or would have known was false
> except for his reckless disregard for the truth; (2) where the issuing
> magistrate wholly abandoned his [detached and neutral] judicial role;
> (3) where the affidavit is so lacking in indicia of probable cause as to
> render official belief in its existence entirely unreasonable; and
> (4) where a warrant is so facially deficient--i.e. in failing to
> particularize the place to be searched or the things to be seized--that
> the executing officers cannot reasonably presume it to be valid.

<u>United States v. Scott</u>, 83 F. Supp. 2d at 203 (internal citation and quotation omitted)

(alteration in original).  Therefore, this court would conclude that the "good-faith"

exception would apply.

**D.    <u>The Other Motions</u>**

**1.    <u>"Summary Judgment"</u>**

Adams has also filed a so called "Motion for Summary Judgment" (Docket # 11)

wherein he (1) seeks to have his address changed and (2) requests that the court default

the government and quash the search since, at the time the Motion for Summary

Judgment was filed, the government had not responded to his Second Motion for Return

with 14 days.  This court recommends that the Docket be amended to list "P.O. Box 781

Norwood, MA 02093" as Adams' official address.  However, Adams' Motion should

otherwise be denied.

Since the date Adams filed his Motion for Summary Judgment, the government

filed an "Opposition to *Second* Motion for Return of Seized Property" (Docket # 15)

-17-

(emphasis in original), and Adams has failed to show that he was prejudiced by any delay, if, in fact, there was an impermissible delay. Further, the government's opposition was not untimely since the government has represented that it did not receive notice of the Second Motion for Return in a timely fashion and promptly sought, and received, extensions once it learned of Adams' filing. Thus, this court recommends that Adams' Motion for Summary Judgment be denied, except that his address of record should be amended.

### 2. The Emergency Petitions

Adams has also filed Emergency Petitions for "Declaratory Judgment" (Docket # 16) and for a "Writ of Quo Warranto" (Docket # 17). In both Petitions, he incoherently raises many points in passing and makes several impassioned, yet undeveloped, arguments. These filings are insufficient since, although pro se litigants are held to a standard of pleading less stringent than that for lawyers, "[c]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system; such complaints must be dismissed[.]" Green v. Commonwealth of Mass., 108 F.R.D. 217, 218 (D. Mass. 1985). Moreover, many of Adams' arguments, such as his contention that the IRS is not authorized to seize documents and/or to collect taxes, go beyond a challenge to the search warrants under Fed. R. Crim. P. 41(g) and should be raised in a separate action. Cf. In re FDIC, 762 F. Supp. 1002, 1005-06 (D. Mass. 1991) (court will

not address substantive issue that goes beyond motion being considered on the

Miscellaneous Business Docket).

## IV.  CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to

whom this case is assigned that Adams' (1) First Motion for Return (Docket # 1);

(2) Second Motion for Return (Docket # 6); (3) "Emergency Petition for Declaratory

Judgment" (Docket # 16); and (4) "Emergency Petition for Writ of Quo Warranto"

(Docket # 17) all be DENIED in their entirety.  In addition, this court also recommends

that the Docket be amended to reflect Adams' new address as listed herein, but that his

"Motion for Summary Judgment" (Docket # 11) otherwise be DENIED as well.[4]


                                    / s / Judith Gail Dein
                                    Judith Gail Dein

---

[4] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

United States Magistrate Judge