FILED
IN CLERKS OFFICE
2005 FEB 22 A 10: 23
U.S. DISTRICT COURT
DISTRICT MASS.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Charles William Adams | Case Number: 1:04-MC-10193-RWZ |
| Unrepresented Plaintiff, | Filed: 22 February 2005 |
| v. | MEMORANDUM OF LAW |
| UNITED STATES OF AMERICA, et al. | 26 U.S.C. 7608 |
| Defendants | SCANNED DATE: 2/23/05 BY: DH |

## MEMORANDUM OF LAW: 26 U.S.C. 7608

YOUR PLAINTIFF is a Natural Man, the Sovereign Creator of his servant government, a creation of Our Creator, Sui Juris, who under threat, duress and coercion, petitioned and invoked the jurisdiction of this Court for the constrained purpose of this civil case 04-MC-10193 pursuant to his First Amendment right to redress and never knowingly or unknowingly waiving any his rights herein presents the following MEMORANDUM OF LAW: 26 U.S.C. 7608, concerning Judge Rya Zobel's "REPORT AND RECOMMENDATION" of November 2, 2004 and presented to the Plaintiff and Defendant for the first time on January 11, 2005.

**In summary, §7608 requires delegations from the Secretary to enforcement agents. In reference to §7608(a), it will be shown in subsequent pages of this memorandum that this "ATF" authority has flowed through the ATF unit within I.R.S., ultimately to be passed onto the BATF. But, in the search for authority under §7608(b), a review of all published TDOs and CDOs reveals that there is no such delegation and <u>there NEVER was an IMPLEMENTING REGULATION</u>[1].**

---

[1] Mertens' Law of Federal Income Taxation, § 3.56, it is indicated that the absence of regulations means that the section is not intended to be implemented.

Federal Register or Cumulative Bulletin (C.B.), but is found in I.R.M. 1229, the Handbook of Delegation Orders. The lack of publication of such an order is telling.

From 1950 to the present, the Secretary of the Treasury has issued in excess of 100 published delegation orders relating to the duties and functions of the Commissioner and the I.R.S., and many of these have been abated or rescinded since they were originally issued. Sometime after 1982 or 1983, the Treasury compiled these TDOs and renumbered them, and the renumbered TDOs are always cited in the Handbook as authority for CDOs, even though the former have never been published in the Federal Register. In issuing CDO No. 97 (Rev. 27), the Commissioner cited as his authority the regulation at 301.7121-1(a), TDO No. 150-07, TDO No. 150-09 and TDO No. 150-17, "subject to the transfer of authority covered in TDO No. 120-01, as modified by TDO No. 150-27." In reality, TDO No. 150-07 is the former TDO No. 150-32, which simply authorized closing agreements under the '39 Code. TDO No. 150-09 is really the former TDO No. 150-36, which merely permitted functions performed for and under the authority of the '39 Code to be continued under the '54 Code. TDO No. 150-17 is the former TDO No. 150-83 (amended), which provides authority under tax treaties. TDO No. 120-01 is in reality TDO No. 221, which established the BATF in 1972. TDO No. 150-27 is TDO No. 221-3 (Rev. 2), which conveyed the authority to administer wagering taxes (Chapter 35 of the Code) to the Commissioner. If the regulation 301.7121-1(a) had been omitted from this unpublished CDO No. 97 (Rev. 27), the only authority which would have been delegated to lower echelon IRS agents would have been the authority to enter closing agreements for taxes under the '39 Code, those taxes subject to tax treaties, and those related to BATF taxes and wagering. Thus, the regulation under §7121 is of critical importance to this delegation order. The question to be asked concerns the effect of a

Code section apparently having no regulations, and the extent and scope of delegation orders issued when there are no regulations.

A plain reading of §7608 reveals that the section itself conveys authority to nobody other than the Secretary; the Secretary, in turn, must authorize agents and this calls for the issuance of delegation orders. Under the repealed regulation 301.7608-1, it is obvious that some type of authority had been conveyed to the Commissioner, but here even he had to issue delegation orders appointing agents. Thus, to follow the flow of authority under §7608, it is essential to consult Treasury Department Orders and Commissioner's Delegation Orders.

In 1946, the Administrative Procedure Act was adopted and the same required federal agencies to publish in the Federal Register statements of their central and field organizational structures as well as the methods by which their functions were channeled (delegation orders); see 5 U.S.C., §552. It is acknowledged by both Treasury and I.R.S. that these items must be so published; see 31 C.F.R. §1.3(a), and 26 C.F.R., §601.702(a). In fact, it is acknowledged that anything concerning or affecting the American public must be published. In 1953, Revenue Ruling 2 (1953-1 CB 484) was issued and it required all divisions or units of the I.R.S. to publish in the Federal Register any item of concern to the public. This was more clearly expressed in Rev. Proc. 55-1 (1955-2 CB 897) as follows:

```
"It shall be the policy to publish for public information
all statements of practice and procedure issued primarily
for internal use, and, hence, appearing in internal
management documents, which affect rights or duties of
taxpayers or other members of the public under the Internal
Revenue Code and related statutes."
```

That which is expressed above currently manifests itself within 26 C.F.R., §601.601(d)(2)(b), which reads as follows:

"A 'Revenue Procedure' is a statement of procedure that affects the rights or duties of taxpayers or other members of the public under the Code and related statutes or information that, although not necessarily affecting the rights and duties of the public, should be a matter of public knowledge."

Before commencing with a review of "modern" TDOs, it might perhaps be useful to examine older delegation orders and TDOs issued before and during the time of the '39 Code; by doing so, it may be seen how authority from the President and Secretary has been delegated. For example, Executive Order 6166, dated June 10, 1933, stated as follows:

> "All functions now exercised by the Bureau of Prohibition of the Department of Justice with respect to the granting of permits under the national prohibition laws are transferred to the Division of Internal Revenue in the Treasury Department.
> "The Bureaus of Internal Revenue and of Industrial Alcohol of the Treasury Department are consolidated in a Division of Internal Revenue, at the head of which shall be a Commissioner of Internal Revenue."

Executive Order No. 6639, dated March 10, 1934, stated as follows:

> "1.(a) The Bureau of Industrial Alcohol and the Office of Commissioner of Industrial Alcohol are abolished, and the authority, rights, privileges, powers and duties conferred and imposed by law upon the Commissioner of Industrial Alcohol are transferred to and shall be held, exercised, and performed by the Commissioner of Internal Revenue and his assistants, agents, and inspectors, under the direction of the Secretary of the Treasury."

And TDO No. 143, dated December 6, 1951, provided as follows:

> "By virtue of the authority vested in me as Secretary of the Treasury by Reorganization Plan No. 26 of 1950, there are hereby transferred to the Commissioner of Internal Revenue the functions and duties now performed by collectors of Internal Revenue in connection with tobacco and other taxes imposed under Chapter 15 of the Internal Revenue Code.

> "The functions and duties herein transferred to the Commissioner of Internal Revenue may, at his discretion, be delegated to subordinates in the Bureau of Internal Revenue service in such manner as the Commissioner shall from time to time direct."

Thus each delegation order must be examined to determine the authority conveyed therein.

In 1949, Congress enacted a law authorizing the President to reorganize the executive departments; see 63 Stat. 203, chap. 226, codified at 5 U.S.C., §901, et seq. Pursuant to this authority, the President promulgated Reorganization Plan No. 26 of 1950 (15 Fed. Reg. 4935, 64 Stat. 1280), which restructured the entire Treasury Department via the following:

> "[T]here are hereby transferred to the Secretary of the Treasury all functions of all other officers of the Department of the Treasury and all functions of all agencies and employees of such Department."

By this reorganization plan, all statutory and delegated authority of anyone in the Treasury Department was immediately divested and placed into the hands of the Secretary. Thereafter, Reorganization Plan No. 1 of 1952 (17 Fed. Reg. 2243, 66 Stat. 823) reorganized the Bureau of Internal Revenue, the name of which was changed to the Internal Revenue Service the following year; see T.D. 6038, 1953-2 CB 443.

Based upon the above reorganization plans, on March 15, 1952, the Secretary issued TDO No. 150, which authorized the continued performance of functions by Treasury officers and agents until changed by subsequent order. This order established a series of later orders, all of which deal with and concern administration of the internal revenue laws.

A review of the TDOs issued since the reorganization place discloses that most of them concern only organizational changes made to the I.R.S.

Insofar as authority granted pursuant to §7608 is concerned, of those which were published, only TDO No. 150-42 could possibly embody the criminal enforcement powers to which §7608 relates. Because the Commissioner and Secretary in the past promulgated regulation 301.7608-1, it is assumed for purposes of this memo that some type of delegation under §7608 was granted by the Secretary to the Commissioner.

Based upon the above assumption, the process of determining what agent has been delegated §7608 authority thus requires examination of all published CDOs issued by the Commissioner. By reviewing these various CDOs, it is possible to trace the authority which is the subject of §7608.

The only possible CDOs which could delegate §7608 authority are numbered 31, 33 and 34. On April 30, 1956, CDO No. 31 was issued delegating to the Assistant Commissioner and the Director of the Alcohol and Tobacco Tax Division the authority to administer and enforce chapters 51, 52 and 53 of the Code (the "ATF" chapters), in addition to a few other functions. A few months later, CDOs No. 33 and 34 were issued and these orders also related to alcohol and tobacco taxes. Once these units of the I.R.S. had been delegated these enforcement responsibilities, Congress thereafter in 1958 created §7608, and the regulation at 301.7608-1 was promulgated in 1959. Below is a list containing the cites where these and subsequent revisions of these orders were published.

```
CDO No. 31:
(a) Original, 21 Fed. Reg. 3083, 1956-1 CB 1015.
(b) Rev. 1, 34 Fed. Reg. 87, 1969-1 CB 379.
(c) Rev. 2, 35 Fed. Reg. 16808, 1970-2 CB 487.
(d) Rev. 3, 36 Fed. Reg. 18678, 1971-2 CB 524.
(e) Rev. 4, 36 Fed. Reg. 22607, 1971-2 CB 525.
```

```
CDO No. 33:
(a) Original, 21 Fed. Reg. 4415, 1956-2 CB 1375.


CDO No. 34:
(a) Original, 21 Fed. Reg. 5851, 1956-2 CB 1375.
(b) Revoked, 38 Fed. Reg. 33407, 1973-2 CB 462.
```

As can be seen from these orders, the same allowed for the seizure and forfeiture of property and the enforcement of the criminal laws. Logically, it is these orders which permitted the promulgation of the regulation at 301.7608-1.

**The ATF Division of the I.R.S. was the unit which was responsible for the administration and enforcement of the laws which were the subject of CDOs No. 31, 33 and 34. This ended with the creation of the Bureau of Alcohol, Tobacco and Firearms via TDO No. 221 on June 6, 1972; see 37 Fed. Reg. 116696, 1972-1 CB 777.** Among other administration and enforcement functions transferred to BATF via this order were the following:

```
"(a) Chapters 51, 52 and 53 of the Internal Revenue
Code of 1954 and sections 7652 and 7653 of such Code
insofar as they relate to the commodities subject to
tax under such chapters;
"(b) Chapters 61 to 80, inclusive, of the Internal
Revenue Code of 1954, insofar as they relate to the
activities administered and enforced with respect to
chapters 51, 52 and 53."
```

About 2 ½ years later, the Secretary issued TDO No. 221-3 (40 Fed. Reg. 1084, 1975-1 CB 758) which delegated to the BATF the authority to administer and enforce "chapter 35 and chapter 40 and 61 through 80, inclusive, of the Internal Revenue Code of 1954 insofar as they relate to activities administered and enforced with respect to chapter 35." Chapter

35 deals with wagering taxes and chapter 40 concerns occupational taxes related to wagering. Some 1 ½ years later, TDO No. 221-3 (Rev. 1) was issued. The only real, detectable distinction between the former and latter orders was the inclusion of the following phrase in the latter:

```
"The Commissioner may call upon the Director for assistance
when it is necessary to exercise any of the enforcement
authority described in section 7608 of the Internal Revenue
Code."
```

But, on January 14, 1977, the Secretary transferred back to the I.R.S. the enforcement duties relating to wagering via TDO No. 221-3 (Rev. 2). Thereafter, the authority of BATF encompassed chapters 40, 51, 52 and 53 of the 1954 Code in addition to the authority to enforce other non-Code laws. **It is of great significance that the repeal of regulation 301.7608-1 occurred shortly after the creation of the BATF. The authority of BATF agents to exercise the functions under §7608 is today found in 27 C.F.R., §70.28.**

**In summary, §7608 requires delegations from the Secretary to enforcement agents. In reference to §7608(a), it has been shown above that this "ATF" authority has flowed through the ATF unit within I.R.S., ultimately to be passed onto the BATF.** But, in the search for authority under §7608(b), a review of all published TDOs and CDOs reveals that **there appears to have been no such delegation.**

Thus, if a Special Agent is conducting any investigation pursuant to the authority of §7608, that investigation can only encompass violations of the alcohol, tobacco and firearms tax laws, and **there is no apparent authority to conduct any federal income tax investigation.**

Special Note: This memo deals solely with items such as regulations and delegation orders mentioned above which have actually been published via the mandates of the APA. Undoubtedly, there are delegation orders

that exist which have not been published, and those would be prevented from being published because of the operation of 1 CFR §5.4.

I affirm and attest that the above statements are true and correct to the best of my knowledge and are not intended to mislead in any way. The above statements of fact are statements concerning facts of which I have personal knowledge. These statements are made for the record in this action. I, Charles William Adams have freely hereunto set my hand this Twenty-Second day of February, 2005.

L.S.                          A Living Soul, Created by The Creator

## CERTIFICATE OF SERVICE

I, Charles William Adams, a citizen of the Commonwealth of Massachusetts over the age of 21, do hereby certify that a true copy of the following documents:

1. MEMORANDUM OF LAW: 26 U.S.C. 7608; and,
2. CERTIFICATE OF SERVICE;

Have been served on Twenty-Second day of February in the year of our Lord 2005 by my own hand to the Clerk of the US District Court and Victor A. Wild in care of the office of the Assistant U.S. Attorney, Suite 9200, One Courthouse Way, Boston Massachusetts.

Charles William Adams, unrepresented Plaintiff, Sui Juris

Thus, if an IRS Special Agent is conducting any investigation pursuant to the authority of §7608, that investigation must only encompass violations only of the alcohol, tobacco and firearms tax laws, and there is no apparent authority possessed by an IRS Special Agent to conduct any federal income tax investigation.

### SECTION 7608: CRIMINAL ENFORCEMENT OF FEDERAL TAX LAWS

If you ask an IRS Special Agent to cite his statutory authority to act, he will invariably reply "§7608." The problem with the mere citation of §7608 is apparent upon review of the section itself. This section currently has three (3) subsections, and the first two are the most important. Subsection (a) simply authorizes a criminal investigator to investigate crimes regarding the taxes imposed in subtitle E of the Code, which are the alcohol, tobacco and firearms taxes and to carry firearms. It is subsection (b) which would provide the authority to investigate an income tax crime. The purpose of this memo is to analyze the C.I.D. function of the I.R.S., and to determine what investigative authority is possessed by this unit, *if any*, pursuant to §7608. In fact, the American public should know the functions and delegated authority of the C.I.D. because it is charged with the knowledge of the scope and limitations upon the authority of federal agents, who can only act within the scope of such authority. See Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384, 68 S. Ct. 1, 3 (1947); Dade Park Jockey Club v. Commonwealth, 253 Ky. 314, 69 S.W.2d 363, 365 (1934); Morris Plan Bank of Georgia v. Simmons, 201 Ga. 157, 39 S.E.2d 166, 175 (1946); Northern Pac. Ry. Co. v. United States, 70 F. Supp. 837, 860 (D.Minn. 1946); Sunshine Dairy v. Peterson, 183 Or. 305, 193 P.2d 543, 552 (1948); United States v. Jones, 176 F.2d 278, 281 (9th Cir. 1949); Patten v. State Personnel Board, 234 P.2d 987, 990 (Cal. App. 1951); State ex rel Young v. Niblack, 99 N.E.2d 839, 841 (Ind. 1951); State v. Hartford

Accident & Indemnity Co., 138 Conn. 334, 84 A.2d 579, 581 (1951); Davis v. Pelley, 102 N.E.2d 910, 912 (Ind. 1952); Lien v. Northwestern Engineering Co., 54 N.W.2d 472, 476 (S.D. 1952); Sittler v. Board of Control of Michigan College, 333 Mich. 681, 53 N.W.2d 681, 684 (1952); Bear River Sand & Gravel Corp. v. Placer County, 258 P.2d 543, 546 (Cal. App. 1953); Rogers v. County Comm. of New Haven County, 141 Conn. 426, 106 A.2d 757 (1954); Mason County Civic Research Council v. County of Mason, 343 Mich. 313, 72 N.W.2d 292, 296 (1955); Government of Virgin Islands v. Gordon, 244 F.2d 818, 821 (3rd Cir. 1957); Joseph A. Cicci, Inc. v. Allanson, 187 N.Y.S.2d 911, 913 (1959); Atlantic Co. v. Moseley, 215 Ga. 530, 111 S.E.2d 239, 242 (1959); Flavell v. Dept. of Welfare, City and County of Denver, 355 P.2d 941, 943 (Colo. 1960); City of Calhoun v. Holland, 222 Ga. 817, 152 S.W.2d 752, 754 (1966); Gray v. Johnson, 395 F.2d 533, 537 (10th Cir. 1968); Gammill v. Shackelford, 480 P.2d 920, 922 (Okl. 1970); Baker v. Deschutes County, 498 P.2d 803, 805 (Or.App. 1972); City of Mercer Island v. Steinmann, 9 Wash. App.479, 513 P.2d 80, 83 (1973); United States v. Gemmill, 535 F.2d 1145 (9th Cir. 1976); Lopez-Telles v.I.N.S., 564 F.2d 1302 (9th Cir. 1977); Bollow v. Federal Reserve Bank, 650 F.2d 1093, 1100 (9th Cir. 1981); Lavin v. Marsh, 644 F.2d 1378, 1383 (9th Cir. 1981); Smith v. Sorensen, 748 F.2d 427, 432 (8th Cir. 1984); and Watrel v. Commonwealth Dept. of Education, 488 A.2d 378, 381 (Pa. Comwlth. 1985). **Acts of federal agents without delegated authority are void**; see Cudahy Packing Co. v. Holland, 315 U.S. 357, 62 S.Ct. 651 (1942); United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820 (1974); United States v. Pees, 645 F. Supp. 687 (D. Col. 1986); United States v. Hovey, 674 F. Supp. 161 (D. Del. 1987); United States v. Spain, 825 F. 2d 1426 (10th Cir. 1987); United States v. Emerson, 846 F. 2d 541 (9th Cir. 1988); United States v. McLaughlin, 851 F. 2d 283 (9th Cir. 1988); and United States v. Widdowson, 916 F.2d 587, 589 (10th Cir. 1990). **If a federal agent exceeds his delegated authority and commits a tort**

**within a state, he may be sued in state court**; see Johnston v. Earle, 245 F. 2d 793 (9th Cir. 1957); and Hunsucker v. Phinney, 497 F. 2d 29 (5th Cir. 1974).

The original § 7608 as it appeared in the Internal Revenue Code enacted in August, 1954, was nothing more than a cross reference section. In 1958, an act entitled the "Excise Tax Technical Changes Act of 1958," P.L. 85-859, 72 Stat. 1275, 1279, amended §7608 by inserting therein the following:

> "Sec. 7608. **AUTHORITY OF INTERNAL REVENUE ENFORCEMENT OFFICERS.**
> "Any investigator, agent, or other internal revenue officer by whatever term designated, whom the Secretary or his delegate charges with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of subtitle E or of any other law of the United States pertaining to the commodities subject to tax under such subtitle for the enforcement of which the Secretary or his delegate is responsible, may --
> "(1) carry firearms;
> "(2) execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under authority of the United States;
> "(3) in respect to the performance of such duty, make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed, or is committing, such felony; and
> "(4) in respect to the performance of such duty, make seizures of property subject to forfeiture to the United States."

It was not until 1962 that subsection (b) of this section was added via P.L. 87-863, 76 Stat. 1141, 1143, which read as follows:

> "(b) Enforcement of Laws Relating to Internal Revenue Other Than Subtitle E.--
> "(1) Any criminal investigator of the Intelligence Division or of the Internal Security Division of the

> Internal Revenue Service whom the Secretary or his delegate charges with the duty of enforcing any of the criminal provisions of the internal revenue laws or any other criminal provisions of law relating to internal revenue for the enforcement of which the Secretary or his delegate is responsible is, in the performance of his duties, authorized to perform the functions described in paragraph (2).
> "(2) The functions authorized under this subsection to be performed by an officer referred to in paragraph (1) are --
> "(A) to execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under authority of the United States;
> "(B) to make arrests without warrant for any offense against the United States relating to the internal revenue laws committed in his presence, or for any felony cognizable under such laws if he has reasonable grounds to believe that the person to be arrested has committed or is committing any such felony; and
> "(C) to make seizures of property subject to forfeiture under the internal revenue laws."

The structure of §7608 has remained basically the same since 1962, although a subsection (c) was added via the "National Narcotics Leadership Act of 1988," P.L. 100-690, 102 Stat. 4181, 4504.[1] An interesting inquiry concerns precisely what are the taxes for which the Secretary or his delegate are responsible, such language appearing within this section.

For a period of time, published regulations implementing §7608 did exist. On October 21, 1959, Treasury Decision 6421, 24 Fed. Reg. 8644, 1959-2 C.B. 433, 440, was promulgated, thus creating 26 C.F.R., §301.7608-1, which read as follows:

**§ 301.7608-1 AUTHORITY OF INTERNAL REVENUE ENFORCEMENT OFFICERS.**--Any investigator, agent, or other internal revenue officer by whatever term designated, whom the Commissioner, Assistant Commissioner (Operations), Director, Alcohol and Tobacco Tax Division, regional commissioner, or assistant regional commissioner (alcohol and tobacco tax) charges with the duty of enforcing any of

the criminal, seizure, or forfeiture provisions of subtitle
E or of any other law of the United States pertaining to
the commodities subject to tax under such subtitle for the
enforcement of which such officers are responsible, may
perform the functions provided in section 7608.

**When subsection 7608(b) was added in 1962, no regulation was ever published to implement its provisions.** The only published regulation issued under §7608, which is the one cited above, **was finally repealed** via Treasury Decision 7297, 38 Fed. Reg. 34803, 1974-1 C.B. 364, approved on December 13, 1973, shortly after the Bureau of Alcohol, Tobacco and Firearms was established. Currently and since 1973, there are no visible regulations which implement §7608, and in Mertens' Law of Federal Income Taxation, § 3.56, it is indicated that the absence of regulations means that the section is not intended to be implemented, the authority cited for the proposition being United States v. Farrar, 281 U.S. 624, 50 S.Ct. 425 (1930), and Mintz v. Baldwin, 289 U.S. 346, 53 S.Ct. 611 (1933).

In order to determine the flow of delegated authority under §7608, it will be essential hereafter to discuss in some detail all Treasury Department Orders (herein "TDO") and Commissioner's Delegation Orders (herein "CDO"). But, before doing so, perhaps an example will best suffice to show the course and direction of this memo. In the Code, the Secretary is authorized via §7121 to enter into closing agreements. Since the Secretary is primarily engaged in international activities and is thus too busy to tend to this detail personally, he has conveyed this authority to the Commissioner via the regulation at 26 C.F.R., §301.7121-1. But again, the Commissioner does not perform the task of making and entering closing agreements, and finds it necessary to delegate this responsibility to others. The appropriate CDO in question in this respect is CDO No. 97; the current version of this delegation order was made effective as of October 31, 1987, and it is not published in either the